COOPER *v.* ROBERTSON INVESTMENT COMPANY.

[77 South. 953, Division A.]

BANKS AND BANKING. *Knowledge of president. Imputing knowledge to bank.*

Under the facts in this case as set out in its opinion the court held, that where the president of a bank gave a deed to the bank in settlement of a debt due by him to it, the bank was not chargeable with the president's knowledge of a prior unrecorded bond for title given by the president to the defendant, nor was its title affected by such bond, first, because of the fraudulent scheme entered into by the president and defendant, as a part of which the bond for title was executed; second, because the bank was a purchaser from its president for value without notice of defendant's claim, it not being chargeable with the president's knowledge thereof, since where an agent is engaged in a transaction, in which he is interested adversely to his principal, or is engaged in a scheme to defraud the latter, the principal will not be charged with knowledge of the agent acquired therein; third, because by agreement between the president and the defendant, the bond for title was expressly cancelled, and it is not competent to vary the terms of that contract by showing a contemporaneous parol agreement that the bond should remain in force.

APPEAL from the chancery court of Adams county. HON. R. W. CUTRER, Chancellor.

Bill by Tim E. Cooper, assignee and receiver of the Century Banking Company against the Robertson Investment Company, and others. From the decree rendered, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Tim E. Cooper*, for appellant.

The bond for title given by Robertson to Anders was in part execution of a fraudulent scheme to cover his property from creditors, and a court of equity will lend him no aid in enforcing that instrument.

Second. The knowledge of the existence of that bond for title by Robertson, the president of the Century Banking Company, will not be imputed to the bank. Robertson was acting in his own interest, and it was a fraud upon the bank for him to convey the property to it, he having already given the bond for title to Anders. Cook on Corporations, sec. 727; *Organized Charities* v. *Mansfield,* 82 Conn. 504; *Chestnut, etc., Co.* v. *Record Publishing Co.* 221 Pa. St. 235; *American, etc., Co.* v. *Rilez,* 70 W. Va. 409; *Lee* v. *Elliott Co.,* 75 S.E. (Va.) 146; *Roberts* v. *Hughes Co.,* 83 Atl. (Vt.) 807.; *Tegarden* v. *Lumber Co.,* 154 S. W. (Texas.) 973; *Tate* v. *Security Co.,* 63 N. J. Eq. 559; *Corcoran* v. *Snow Castle Co.,* 141 Mass. 74; *Levy* v. *Kauffman,* 114 Fed. 170; *Barnes* v. *Trenton, etc., Co.,* 27 N. Y. Eq. 33; *Winchester* v. *Balt. & C. R. R. Co.,* 4 Md. 231; *In re Plankington,* 87 Wis. 378; *Higgins* v. *Lansingle,* 154 Ill. 301; *Wickersham* v. *Chicago, etc., R. R. Co.,* 18 Kan. 481; *Brookhouse* v. *Union R. Co.,* 73 N. H. 368; *Georgia, etc., Assn.* v. *Crane,* 137 Ga. 50.

Third. The bank was a purchaser for value without notice, and against a *bona-fide* purchaser a secret equity cannot avail. *Atkinson* v. *Graves,* 70 Miss. 42; *Conn* v. *Boutwell,* 101 Miss. 353; Perry on Trusts (6 Ed.), section 218; *Barksdale* v. *Learned,* 73 So. 736, 112 Miss. 861.

It is immaterial whether the conveyance by the bank to George H. Robertson, and by him to the Robertson Investment Company were conveyances to a *bona-fide* purchaser for value. Where one person in a chain of title is a *bona-fide* purchaser, it is immaterial that his vendee or other subsequently deraigning title through him are or are not *bona-fide* purchasers. 2 Pom. Eq. (3 Ed.) 254; *Atkinson* v. *Graves,* 70 Miss. 42; *Barksdale* v. *Learned,* 112 Miss. 861.

Fourth. The bond for title was canceled by written contract made in New Orleans in July, 1912, and it is not competent to modify or control its provisions by a

contemporaneous oral agreement. *Baum* v. *Lynn,* 72 Miss. .932.

Fifth.   Anders accepted the note of the Robertson Investment Company and a mortgage of its property in novation of his debt against Robertson, and since Robertson owned all of the stock of the company this was in equity a valued mortgage.   Cook on Corporations, sec. 664; *Manufacturing Co.* v. *Montgomery,* 144 Mo. App. 494; *Millsaps* v. *Bank,* 71 Miss. 361.

Sixth.   Anders knowingly sat by with an unrecorded bond for title and saw the receiver of the bank change its condition by paying out several thousand dollars in protection of the property and this without giving any notice of his claim, and he is therefore now estopped to assert it.

It is to be noted that if either one of these various propositions of the appellant is maintained, the decree of the court below must be reversed and a decree rendered in his favor.   It is not necessary that more than one of the propositions we advance shall be sustained.

*A. H. Geisenberger* and *C. A. Goeth,* for appellee.

The contention of appellant that the bond for title was a scheme entered into between N. T. Anders and V. Otis Robertson for the purpose of defeating and delaying creditors of Anders and placing the property beyond the reach of his wife, is not sustained by the evidence.

In disposing of the point suffice it to say that a court of equity will not presume fraud, but that it must be proven that the burden to establish fraud was upon appellant, that the great weight of the evidence supported the contention of N. T. Anders, and that the finding of the chancellor who passed upon the evidence is conclusive.

The Century Banking Company was not a *bona-fide* purchaser for value.   A. Because it was charged with notice of the bond for title given by V. Otis Robertson

and the bank as surety, to N. T. Anders. B. Because the entire consideration passing from the Century Banking Company to V. Otis Robertson was credited on a preexisting debt due by Robertson to this bank, and such consideration will not-support the claim of one as a *bona-fide* purchaser of property. *First Nat'l Bank of Blaine* v. *Blake,* 60 Fed. 78; *Trader Nat'l Bank* v. *Smith,* 22 S. W. 158; *Atlantic Cotton Mill* v. *Indian Orchard Mills* 17 N. E. 501; *Cook* v. *American Tubing Co.,* 9 L. R. A. (N. S.) 210, 211, 212; *Holden* v. *Bank,* 72 N. Y. 286; *Bank* v. *Cushman,* 121 Mass. 490; *First Nat'l Bank* v. *Town of New Milford,* 36 Conn. 93; *Loring* v. *Brodie,* 134 Mass. 453; *Bank* v. *Irons,* 8 Fed. 1. *Bank* v. *Smith* (Tex. Civ. App.), 22 S. W. 1056, 60 Fed. 79, 80.

Appellant relies upon the decision of this court in the case of *Scott County Milling Co.* v. *Powers,* 73 So., No. 9, p. 792. In reading appellant's brief we are impressed with the fact that appellant seems to assume that this is the first case deciding this principle, and that it was new law, and a shock to the chancellor who tried this case, when in fact, the Scott County Milling Company case enunciated an elementary principle of law as old as the law of principal and agent.

The plainly distinguishing features between the *Scott County Milling Company* v. *Powers* case, and this case at bar, are these: In the first case the agent, Coor, resided in Jackson county, Mississippi; his principal, the Scott County Milling Company had its place of business in the state of Missouri; he was local agent and very distant from his principal, with limited authority to sell flour. He also was the manager of the Harding-Coor Company, at Coor's place of residence, whose interest were plainly adverse to the interest of the Scott County Milling Company. In the case at bar, V. Otis Robertson was the president, manager and active executive head of the Century Bank, at the place where the bank was operated; he owned one-half of the stock of

the corporation.    He acquired his knowledge of the
bond for title at a time when there was no adverse
interest between Robertson and the bank (if there ever
was such adverse interest). The bank having thus ac-
quired the notice when no adverse interest existed, the
knowledge of its written contract so executed continued.
In the Scott County Milling Company case, the adverse
interest arose the moment Coor, as selling agent,
attempted to sell to his own company, as buyer.    He
could not act as agent for two principals under these
circumstances and surely could not charge his principal,
the Scott County Milling Company with notice.

Under proposition "B" appellee urges that V. Otis
Robertson and Dabney, the cashier of the Century Bank,
each testified that the consideration passing from the
bank to Robertson was thirteen thousand dollars and
fifty-seven cents, and that said amount was wholly
credited on overdrafts and notes, or other indebtedness
due by Robertson to the Century Bank.

Appellant on page 13 of his brief, admits that this
was the consideration received by Robertson for the
conveyance of the property to the bank.    There is no
contention that any other consideration was paid to
Robertson.    Simkins on Contracts and Sales, uses this
language: "A preexisting debt is not such a considera-
tion as would support a claim of one as a *bona-fide*
purchaser of property." *The Elm Bank case,* 72 Fed.
618; *Tarkington* v. *Purvis,* 9 L. R. A. 611.

On July 22, 1912, N. T. Anders, being the owner of
an undivided one-half of the Sligo-Overton Plantations,
and he being then the holder of said bond for title, the
agreement made between him and Robertson, in New
Orleans, on that date, did not have the effect of depriv-
ing N. T. Anders of his interest in said land and can-
celling the bond for title.

Upon the facts heard by the trial court and determined
by the trial court, it was found that the agreement of
July 22, 1913, did not have the effect contended for by

V. Otis Robertson and his receiver, and the decree of
the chancellor is conclusive.

The last proposition advanced and urged by appellant
is to the effect that Anders is estopped because he sat by
and permitted the receiver to take a part of the fourteen
thousand dollars paid by Dr. John A. McLeod as a part
of the purchase price of this same land (on a trade
which Dr. McLeod failed to conclude) and use the same
to discharge the Riddick mortgage. There is no
intimation in this record that N. T. Anders had any
notice of the fact that the receiver was making such
payment, and in the absence of such notice N. T.
Anders could not be estopped. No act was done by
Anders that could constitute one of the essential
elements of an estoppel.

"To constitute an estoppel, the following elements are
essential: (1) There must be conduct, acts, languages,
or silence amounting to a representation or a conceal-
ment of material facts. (2) These facts must be known
to the party estopped at the time of his said conduct,
or at least, the circumstances must be such that knowl-
edge of them is necessarily imputed to him. (3) The
truth concerning these facts must be unknown to the
other party claiming the benefit of the estoppel at the
time when such conduct was done and at the time when
it was acted upon by him. (4) The conduct must be
done with the intention or, at least, with the expecta-
tion, that it will be acted upon by the other party, or
under such circumstances that it is both natural and
probable that it will be so acted upon. (5) The conduct
must be relied upon by the other party, and, thus rely-
ing, he must be led to act upon it. (6) He must in fact
act upon it in such a manner as to change his position
for the worse. *First Nat. Bank* v. *Dean,* 17 N. Y. Supp.
375, 377, 60 N. Y. Super. Ct. 299 (Citing Pom. Eq. Jur.);
*Orange* v. *Palmer,* 10 N. Y. Supp. 201, 204, 56 Hun.
481; *Roberts* v. *Trammell,* 40 N. E. 162, 15 Ind. 423;
*Appeal of Crans* (Pa.), 9 Atl: 282, 287; *Brigham*

117 Miss.—8

*Young Trust Co.* v. *Wagner,* 40 Pac. 764, 765, 12 Utah, 1; *Blodgett* v. *Perry,* 10 S. W. 891, 892, 97 Mo. 263, 10 Am. St. Rep. 307; *Centry* v. *Centry,* 26 S. W. 891, 892, 97 Mo. 202; *Taylor* v. *Zepp,* 14 Mo. 482, 488, 55 Am. Dec. 113; *Action* v. *Dooley,* 74 Mo. 63, 67; *De Berry* v. *Wheeler,* 30 S. W. 338, 339, 128 Mo. 84, 49 Am. St. Rep. 538; *Hall* v. *Warren* (Ariz.), 48 Pac. 214, 216; *Smith* v. *Brown* (Ariz.), 42 Pac. 949, 950; *Hampton* v. *Alford* (Tex.), 14 S. W. 1072, 1073; *Long* v. *Cude* (Tex.), 26 S. W. 1000; *Nichols-Steuart* v. *Crosby,* 26 S. W. 380, 381, 87 Tex. 443; *Security Mortgage & Trust Co.* v. *Caruthers,* 32 S. W. 837, 843, 11 Tex. Civ. App. 430; *Chesapeake & O. R. Co.* v. *Walker,* 40 S. E. 633, 641, 100 Va. 69, quoting 4 Am. & Eng. Dec. (Eq.) 268; *Stevens* v. *Dennett,* 51 N. H. 324, 333; *Troy* v. *Rogers,* 20 So. 999, 1003, 113 Ala. 131; *Griffith* v. *Wright,* 6 Colo. 248, 249;" 3 Words and Phrases, p. 2498.

The appellant obtained all the relief he was entitled to. He has his decree against the Robertson Investment Company for the entire debt sued for and foreclosed the lien on one-half the land. It decreed that Anders owned the other half of the land. This completely disposed of the rights of appellant and appellee and the issues made by the pleadings.

Smith, C. J., delivered the opinion of the court.

Appellant, who is the assignee and receiver of the Century Banking Company, under a general assignment for the benefit of its creditors executed by that company in July, 1912, exhibited his bill in the court below against George H. Robertson, V. Otis Robertson, Robertson Investment Company, and N. T. Anders, to foreclose a vender's lien on certain lands situated in Adams county sold to George H. Robertson by the Century Banking Company, and to cancel Anders' claim to a half interest therein. The court below decreed Anders to be the owner of a one-half interest in the land;

that appellant's lien covered the other half interest therein, and ordered that half interest sold to satisfy appellant's lien. The land was conveyed by H. G. Bulkley to V. Otis Robertson, on December 27, 1910. In February, 1911, Robertson executed a bond for title to N. T. Anders, wherein he admitted the receipt from Anders of seven thousand, five hundred dollars and bound himself in consideration thereof to convey to Anders an undivided half interest in the land, free of all incumbrances. This bond for title was not recorded until July, 1915, and, prior to that time, its existence, in so far as appears from this record, was known only to Robertson and Anders. Robertson was largely indebted to the Century Banking Company, of which he was president, and on September 28, 1911, executed and delivered to that company a deed to the land in settlement of the debt due by him to the bank and the assumption by the bank of a debt due by Robertson to Bulkley, amounting to seven thousand, five hundred dollars secured by vendor's lien on the property. This sale by Robertson to the bank was participated in by practically all of the bank's board of directors, none of whom, other than Robertson, knew of the bond for title theretofore executed by Robertson to Anders. On January 3, 1912, the Century Banking Company conveyed the land to George H. Robertson, the consideration therefor amounting to something over twenty thousand dollars being evidenced by promissory notes payable at future dates and secured by vendor's lien on the land. George H. Robertson conveyed the land to the Robertson Investment Company, a corporation, of which V. Otis Robertson was practically the sole stockholder. Robertson and Anders met in New Orleans, La., in July, 1912, and entered into a written agreement by which it was recited that:

"Whereas, N. T. Anders and V. Otis Robertson both of Jackson, Miss., have heretofore made certain agree-

ments and transferred certain property located on Bailey avenue, in Jackson and in other parts of the city of Jackson, and in Adams county, Mississippi, which said property has been deeded to V. Otis Robertson and held and managed as his own property subject to certain conditions named in said agreements; and whereas, it is now desired by both of said parties to cancel each and all of said agreements by making a sale of all of said property to V. Otis Robertson, and to consider all of said agreements null and void except a certain agreement in relation to certain property located on Mississippi Street, Jackson, Mississippi: Now therefore for and in consideration of the execution on the part of V. Otis Robertson of one note for one thousand dollars due September 1, 1912, and one note for one thousand dollars due November 1, 1912, and one note for eight thousand dollars due January 1, 1913, said notes bearing interest after maturity, it is agreed that all of said agreements shall be considered null and void and of no effect whatsoever, except that the said V. Otis Robertson agrees that when any of said property is disposed of by the said V. Otis Robertson then that he will apply the proceeds of said sale to the payment of the aforesaid notes, but the entire management of said property both as to the terms of sale and price, leasing, etc., shall be under the control of and under the management of the said V. Otis Robertson, the condition being that when said property is sold that the aforesaid notes shall be taken up and paid.''

On the 15th of March, 1913, Anders surrendered to Robertson his three notes and accepted in lieu thereof the note of the Robertson Investment Company for ten thousand, two hundred and fifty-seven dollars and twenty-five cents, due one year after date, secured by a deed of trust on the Sligo and Overton plantations to one E. Turner as trustee. On July 23, 1914, Robertson

delivered and Anders received one thousand shares of the stock of the Robertson Investment Company "in lieu of the debt of N. T. Anders." secured on the Sligo-Overton plantations, which Anders agreed to have canceled on the records of Adams county. This paper recited further that Anders .agreed to redeliver said stock to Robertson upon delivery to him of the notes of one John A. McLeod, due annually for six years, beginning May 1, 1915, bearing six per cent. interest from date, "said notes to be given in purchase of said stock, and said stock to be delivered as said notes are paid by said McLeod, but said notes and said stock to be held by me until paid by said McLeod. If above is all carried out, then all papers in my possession are to be canceled; otherwise to remain in full force." Anders' claim to a half interest in the property is rested by him solely upon the bond for title executed to him by Robertson in February, 1911, which bond for title he admits was one of the agreements referred to in the contract entered into by him and Robertson in New Orleans, in July, 1912, but claims that Robertson, at the time this last contract was entered into, verbally agreed that the bond for title should remain in force and be treated as a security for the notes then executed by him to Anders and referred to in the written agreement. In addition to the foregoing, considerable parol evidence was introduced, from which, in connection with the foregoing, it manifestly appears. that the execution by Robertson to Anders of this bond for title was a part of a scheme entered into by Robertson and Anders for the purpose of concealing Anders' property from his creditors, and also from his wife, whom he then intended to, and afterwards did, desert.

The decree of the court below must be reversed for three reasons: First, because of the fraudulent scheme entered into by Anders and Robertson, as a part of which the bond for title was executed as hereinbefore set out; second, because the Century Banking Company

was a purchaser from Robertson for value, without notice of appellees' claim, it nōt being chargeable with Robertson's knowledge thereof. *Scott County Milling Co.* v. *Powers,* 112 Miss. 798, 73 So. 792; and, third, because by the agreement made in the city of New Orleans in July, 1912, between Robertson and Anders, the bond for title was expressly canceled, and it is not competent to vary the terms of that contract by showing a contemporaneous parol agreement that the bond for title should remain in force as a security to Anders for the payment of the notes then executed to· him by Robertson.

Reversed, and decree here in accordance with the prayer of appellant's bill.

*Reversed, and decree here.*