SIMS *et al.* v. KLINE.*

[104 So. 85.   No. 24660.]

(Division B.   May 11, 1925.)

1. PARTNERSHIP. *Note executed by member of debtor firm in satis-
   faction of account in larger amount, on which suit was threat-
   ened, held supported by sufficient consideration.*

   Where an account carried on the books of a cotton company against
   a firm had been assigned to a bank as collateral security, and
   had been placed with attorneys for suit on the amount, an agree-
   ment by a member of the firm against whom the account was
   charged and suit threatened, executing notes for less amount
   than the amount of the account, in satisfaction of the account, is
   a sufficient consideration to support the note, regardless of
   whether the firm actually owed the account or not.

2. BILLS AND NOTES. *Bank taking notes · without knowledge of ex-
   traneous agreement between maker and payee held purchaser for
   value.*

   Where notes are given to a named person or bearer, in satisfaction
   of a book account claimed against the maker of the note, and as-
   signed by the payee to a bank in satisfaction, or part payment, of
   the debt of the payee, without knowledge of agreement between
   the maker and payee not contained in the note, this constitutes
   the bank a purchaser for value.

3. PRINCIPAL AND AGENT. *Representations by bank's debtor in secur-
   ing notes in settlement of collateral account turned over to him
   for collection held not notice to bank.*

   Where a bank held an account against a person, and another ac-
   count as collateral security, and turned over the account held as
   collateral security to its principal debtor for collection, with-
   out releasing it from liability, and notes are given to the one
   member of the firm against whom the collateral account was held
   in settlement of the account, representations by such debtor of
   the bank to the debtor in the collateral account is not notice to
   the bank, unless actual notice is brought to the bank or sufficient
   facts to constitute notice if followed up by inquiry. The mere
   knowledge of the intermediary in securing the notes would not be
   charged to the bank, as such intermediary is personally in-
   terested in furthering his own business in securing the note, and
   his interest conflicts with that of his principal.

4. BILLS AND NOTES.  *Letter to maker held not agreement that he would never have to pay note, but only that he could renew it at maturity.*

   In such case, where a letter is given to the maker of the note, assuring him that he would never be bothered by suit if said notes are signed, and that the payee had assurance of the officer of the bank that, if he finds it impossible to take up the notes when due they could be renewed, and that the signing of the notes would mean that the payee would be enabled to use the notes to put the payee's account in shape with a newly organized bank and thus give the payee a bank to do business with, which would prevent the necessity of its removing its business to another point, it is not an agreement that the maker of the note will never have to pay the same, but it is an agreement that, if he is not able to pay at maturity, he will be allowed to renew the note.

5. BILLS AND NOTES.  *Whether others were to sign as condition of maker's signing held for jury on conflicting testimony.*

   Disputed questions of fact are for the jury, and, where the maker of a note testifies that others were also to sign the notes with the maker as a condition of the maker's signing, and this testimony is contradicted by the person who secured the delivery of the notes, a peremptory instruction should not be given the maker of the notes.

*Headnotes 1. Bills and Notes, 8 C. J., Section 370; 2. Bills and Notes, 8 C. J., Section 704; 3. Agency, 2 C. J., Section 549; 4. Bills and Notes, 8 C. J., Section 627; 5. Bills and Notes, 8 C. J., Section 1373; Trial, 38 Cyc., p. 1537.

APPEAL from circuit court of Second District, Bolivar county.

HON. W. A. ALCORN, JR., Judge.

Action by R. N. Sims and others, as trustees, against M. Kline. From judgment for defendant, plaintiffs appeal. Reversed and remanded.

*Shands Elmore & Causey,* for appellants.

After the plaintiffs had introduced their evidence and rested, the defendant moved for a peremptory instruction which was granted. The assignment of error which

we shall discuss chiefly is based on the giving of the peremptory instruction against plaintiffs. The first ground relied on is stated as follows:

"That the proof as established by the plaintiff in this case, indisputably proves and shows that the note or notes executed by Meyer Kline here sued on were obtained by fraudulent representations of Mr. Fisher, acting on behalf of the Fisher Cotton Company."

There is no ground there for the peremptory instruction. Saving for the present any discussion of constructive notice, there is abundant evidence that neither the liquidating agent who took the notes nor the chairman of the board of bank examiners who was acting with him, had any sort of actual notice whatever of said alleged fraudulent representations. If the Fisher letter and the testimony of Jake Fink furnish evidence that they did have notice of said alleged false representations, we are not aware of any reason why such evidence is conclusive in its character as against the positive negative testimony of Mr. Kretschmar, and Mr. Anderson especially in view of the positive denial of the writer of the letter that he had the agreements, etc., which he said he had.

Conceding that there was proof of fraudulent representations, yet there was a wealth of proof that the indorsers had no notice of such. It was sufficient, amply sufficient, to make a jury question and to bar a peremptory instruction on the ground merely of fraudulent misrepresentations.

The second ground of the motion is: "That the alleged holders of the note, Kretschmar, Sims & Metcalf, as trustees, had full knowledge of the manner in which the notes were secured and acquired."

Knowledge here must mean of course knowledge of some of the alleged defenses relied on by the defendant. Inasmuch as there is no testimony that the plaintiffs had such knowledge except the Fisher letter which was hearsay on that issue and some scraps of hearsay in Jake Fink's testimony; but abundant testimony that Mr. Kretschmar and Mr. Anderson who·were active in the

matter of taking the notes did not have such knowledge we know not how to argue the proposition that the second alleged ground for a peremptory instruction was in reality no ground.

The third ground of the motion is in the following words: "That in securing and acquiring the notes herein sued on Mr. Fisher of the Fisher Cotton Company was acting for and on behalf of, and at the instance and request of Mr. Kretschmar, representing the trustees and plaintiffs in this case, and the State Banking Department, at that time, being or purporting to act as a liquidating agent."

It was sought to rest this ground on the evidence of W. P. Kretschmar to the effect that the claim of the Fisher Cotton Company against Fink and Kline had been assigned to the old bank, the Commercial Savings Bank, but "The assignment was thereafter turned back to Mr. Fisher to put the account in the hands of an attorney" (R. 133) or "in order that he might make a collection of it" (R. 175) "for our account."

This evidence served as the basis for urging on the court below that in handling this matter Mr. Fisher of the Fisher Cotton Company was the agent of the liquidating agent or the plaintiffs in this case; that as Fisher to obtain the notes made fraudulent representations and promised never to sue on the notes, so it was contended, this served as constructive notice to his principal whether the facts were communicated to the principal or not.

The general rule without doubt is that notice to an agent while engaged about that business is notice to the principal, whether the agent imparts the information to the principal or not. The rule is founded on the notion that the agent will communicate material matters affecting the business to his principal.

The facts, however, do not seem to require or permit the application of that rule here for several reasons: (1) The account was given back to Fisher and was in the hands of his attorneys as early as February, 1921. The bank was closed for liquidation in March, 1921. The

notes were executed in May, 1921. The defendant makes no claim that he did not know the old bank was closed for liquidation. In fact the very letter he relies on was fair notice of such fact. Appellee now contends on this point that Fisher was acting as agent for the liquidating agent, but appellee was charged by law with notice that the liquidating agent had no authority to make an agreement that collection of the notes would not be enforced and much less did he have authority to authorize a sort of alleged sporadic agent to make such an agreement. Even a cashier or president of a live and going bank would have no authority to make such an agreement. If made it would not be binding. *Gills et al.* v. *First National Bank,* 148 Pac. 944, citing many authorities. (2) But the notes which the alleged agent obtained were not notes in favor of the principal, as would have been the case in the usual course of an agent making a collection or settlement with a debtor of a claim of the principal. (3) The notes were not delivered to the alleged principal in the way of an agent delivering the principal's property to the principal. They were indorsed in usual course by the payee and the payee received full credit on his, the payee's, indebtedness and a corresponding amount of his own notes in exchange. (4) It is reasonably clear that in this transaction Fisher was acting in his own interest. He said as much in the letter to Fink which was shown to Kline before the latter signed the notes and thus Kline was put on notice that Fisher was acting for himself. The letter said: "With these notes it would put us (Fisher Cotton Company) in the position to get the new bank to take our account . . . It means whether we have a bank to bank with or not in this community, the notes will put our account in the shape that the new organization will take the account over, and we can then have a bank to do business with, otherwise we will have to leave Greenville."

It was a matter of urgency with Fisher and Kline was put pointedly on notice that the very notes he was about

to execute were intended for use as collateral of the Fisher Cotton Company, so that it would not have to leave Greenville. The notes were accepted in settlement of thirty thousand one hundred and forty dollars of the indebtedness of the Fisher Cotton Company. In the transaction wherein these notes were accepted *pro tanto* in satisfaction of the Fisher Cotton Company indebtedness, in satisfaction of a corresponding amount of the old notes of Fisher Cotton Company, the interest of Fisher, who was practically all of the Fisher Cotton Company, was adverse to the bank. In such a situation, it is not in common sense to be presumed that Fisher though an agent would have pointed out to the parties accepting the notes the defects, infirmities or defenses incident to them. Nor does the law so presume. 31 Cyc. 1595.

For the same reason the Century Banking Company when it accepted a deed from its president in settlement of a debt due by him to the bank was not charged with the president's knowledge of a prior unrecorded bond for title given by the president to the defendant. *Cooper* v. *Robertson Inv. Co.,* 77 So. 953, 117 Miss. 108.

In the case at bar the defendant executed the notes knowing they were urgently wanted so that Fisher Cotton Company could negotiate them in the interest of its own business, a fact which is not necessary to, but appreciably strengthens the application of, the principle announced by Cyc. and applied in *Cooper* v. *Robertson Ins. Co., supra.*

The fourth and last ground of the motion for a peremptory instruction is stated as follows: "That the notes in this case as shown by the proof introduced by the plaintiff, was the mere substantiation of an open account, which had theretofore been assigned to the Commercial Savings Bank, by the Fisher Cotton Company; and that such an account is not negotiable, and when so assigned is acquired with all of the infirmities attached to it at the time of the assignment or thereafter; that the plaintiffs in their case had no title to the chose in action such as would be sufficient to constitute them *bona fide* purchas-

ers for value, without notice; that the law providing for the liquidation of banks in the state of Mississippi, does not provide for the appointment of trustees, and that therefore, suing as the alleged trustees, they are suing in a capacity not recognized in matters of this kind in the liquidation of banks under the law.''

If we remember correctly the position announced here mainly influenced the lower court in granting the peremptory instruction. The argument in support of the position as we recall it, was exceedingly simple. It was that the Mississippi Banking Law did not authorize the appointment of the trustees, the plaintiffs here; therefore the action could not be maintained and the peremptory instruction should be given.

By way of reply the attention of the court is called to the fact that the appointment of the trustees was approved by the chancery court of Washington county. The court had full jurisdiction of the matter, and the decree of the court is presumed to be perfectly good and lawful.

The court found that the plan was ''sound in law and in finance and to the best interest of all parties concerned and that it was (is) without objection.'' There is no complaint that the court lacked jurisdiction of the subject-matter or of the parties. The complaint is that the law with regard to the liquidation of banks does not provide for the appointment of trustees. To our mind the name signifies little. The duties to be performed by the trustees were in the nature of liquidating the assets to pay the creditors of the suspended bank. Aside from this consideration, the matter was agreed and consented to by all parties at interest. Why should a single debtor be allowed collaterally to attack the plan?

The safeguards of the liquidating provisions, were chiefly for the benefit of the creditors of the bank, those who were interested to see that defendant paid his debt. Inasmuch as they all consented to that plan, the only concern of the defendant is satisfied; that is, that he will not have to pay his debt again, if he pays on a judgment rendered in this action.

We have discussed the case thus far as if the contention that Fisher agreed never to sue on the notes were established by the evidence. We have contended that even if that be so, the defense is not available against the appellants. We now contend that the evidence did not warrant the court in assuming that such fact was established as against the Fisher Cotton Company.

It is well to bear in mind that such an agreement in effect relieves the maker of all liability on the note as against the Fisher Cotton Company. Unless Kline were a mere accommodation maker, it is not to be presumed that the parties so intended. It would seem to be a rare and unusual thing for a party not an accommodation maker to execute thirty thousand dollars in notes in favor of another on the clear intention that no legal liability would result against the maker in favor of the payee. Such would be the effect of a valid agreement never to sue on the notes. *Straus* v. *Bank* (Ill.), 98 N. E. 249; *Martin* v. *Monroe* (Ga.), 33 S. E. 62.

It was not shown by the evidence that it was impossible for the defendant to take the notes up when due. It was not even pleaded. It was not shown by the evidence that defendant was unable to meet the notes when due. It was not even pleaded.

It is a well settled rule of construction that the contemporaneous construction placed upon an instrument by the parties thereto is entitled to very great weight in reaching the intent and purpose of the instrument. Many cases in Mississippi have so held. We cite only *Spengler* v. *Lumber Co.*, 94 Miss. 798.

It is further shown that Kline went forward and paid the interest on the note first maturing without even protest. The idea of Kline that the Fisher Cotton Company could not sue him, that he was under no liability to the Fisher Cotton Company, is perfectly consistent with the idea that he was a maker simply for the accommodation of the Fisher Cotton Company. In that case, of course, the Fisher Company could never sue him. The party for whose accommodation the instrument is made cannot sue

the maker. But even if Kretschmar and Anderson should have known that the notes were for the accommodation of the Fisher Cotton Company, then they would have known that the Fisher Cotton Company would never have the right to sue Kline on them, and yet that would have been no sort of defense as against the liquidating agent and those claiming under him.

It is respectfully submitted, therefore that the court greviously erred in granting a peremptory instruction in the above cause.

*Cutrer & Smith,* for appellee.

The appellants in this case do not dispute the first ground for a directed verdict—that is that the signatures of the defendant to the notes here sued on were obtained by fraudulent misrepresentations of H. K. Fisher. The proof established without contradiction that the defendant refused to sign the notes unless he could secure the assurances and statements of Mr. Fisher in writing, and that he signed the notes solely on the faith of the letter of May 18, 1921, which was and did constitute a part of the transaction, as testified to by Mr. Fink, and likewise by Mr. Kline.

Certain it is neither Mr. Fisher, nor the Fisher Cotton Company, could maintain any suit against the defendant on the notes, in view of the written agreement contained in the letter of May 18, 1921. *Monroe* v. *Martin,* 73 S. E. 341, 137 Ga. 262; *Straus* v. *Bank,* 98 N. E. 245; *Kennett Square National Bank* v. *Shaw,* 218 Pa. 612, 67 Atl, 875.

Whether or not Kline would have executed the notes had Fisher not advised him that he, Fisher, was attempting to put his matters in shape for the new bank, is not a question here presented, nor is it material for the decision of this case. The undisputed and established fact is that the only inducements which impelled Kline to execute the notes were the statements of Fisher that he had had the conversation with Messrs. Kretschmar and Anderson, and that he had had the assurances of Kretsch-

mar and Anderson, as set out in the letter of May 18th. This is unequivocally established by the testimony of the witness Jake Fink.

The next question therefore presented, is whether or not the plaintiffs in this case had knowledge or notice of the manner in which the signature of Mr. Kline was secured to the notes. It is not contended by appellants in this case, in the brief, that Fisher was not acting for and on behalf and at the special instance and request of, and for the benefit of the plaintiffs in this case, in the transaction, and at the time the notes were secured. The contention otherwise would be contradicted by the undisputed testimony of Mr. Kretschmar and Mr. Fisher. Mr. Anderson and Mr. Kretschmar, both state that Mr. Kretschmar was acting for the State Banking Department, and exclusively handled the transaction for the Banking Department.

Therefore, at the time Kretschmar requested Fisher to make settlement of the account for and on behalf of, and for the account of the bank, or in the light of after developments, the State Banking Department, he had full authority so to do. This likewise is not disputed by appellants in the brief.

It is likewise an undisputed fact that Mr. Kretschmar, acting for the State Banking Department, accepted the notes from Kline, through Fisher, and he, as well as the two other trustees, Metcalf and Sims, are claiming the benefits of the transaction in attempting to enforce a collection of the notes. Conceding, as appellants do concede, the establishment by the plaintiffs of these facts it is inconceivable on what grounds a reversal of this cause is sought.

The principal is always liable to third persons in a civil suit, for the frauds or misfeasances, or neglect of duty of his agent and those whom the agent employs, though the principal did not authorize or assent to it at the time. This liability runs through all stages of the service. *Mayer* v. *McLure,* 36 Miss. 389, 72 Am. Dec. 190.

Counsel recognizes the well-established rule that notice to an agent acquired while in and about the business of his principal is notice to the principal. *Wilcox* v. *Ruth,* 9 S. & M. 476. The principal is always liable to third persons in a civil suit for the frauds of his agent. *Mayer* v. *McLure, supra.*

Certainly by accepting the benefits and fruits of the frauds perpetrated by Fisher on Kline, plaintiffs in this case are precluded from claiming to be *bona-fide* purchasers for value without notice, and are bound by the transaction in its inception. *Harris* v. *Halliday,* 4 H. 338; *Burns* v. *Yeizer,* 27 Miss. 188; *Kountz* v. *Price,* 40 Miss. 341; *Meyer* v. *Morgan,* 51 Miss. 21.

The fact that Fisher acted without positive instructions, or even contrary to the instructions of Kretschmar, are immaterial, inasmuch as Fisher had authority, in the first instance, to do and perform and transact the particular business entrusted to him by Kretschmar. In fact, Mr. Kretschmar himself testified that the account was turned over to Fisher, with instructions "to take such action as he saw proper."

There can be no question but that Fisher was acting within the actual, as well as the apparent scope of his authority in securing the signature of Meyer Kline, the defendant herein, for the notes in controversy. This was the identical authority which had been conferred upon him by Kretschmar.

A palpable fraud was admittedly perpetrated on Kline by Fisher. It is admitted that Fisher was acting for and on behalf of the plaintiffs in and about the business which he was transacting with Kline. This being true, and not denied, either in the testimony or in appellants' brief, we take it the peremptory instruction requested was correctly granted by the lower court.

Counsel, in their brief, however, say that Kline was charged with the notice that the liquidating agent had no authority to make an agreement that collection of the notes would not be enforced, and much less did he have authority to authorize a sort of alleged sporadic agent

to make such agreement, and cites *Gills* v. *First National Bank,* 148 Pac. 944, as authority for the statement. That case held that a bank cashier or president had no authority to promise a person executing a note to the bank that the maker will not be required to pay the note. No question of fraud was alleged or attempted to be proven, nor was it involved in that case. The case before your Honors is a case where a note obtained by fraud by the payee from the maker is delivered to appellants, with full notice of the fraud thus perpetrated. The authorities are uniform, and particularly in the state of Mississippi, that the bank, nor any principal, can take advantage of the fruits of the transaction thus obtained by fraud by its agent.

The second ground advanced by appellants is that the notes which Fisher obtained were not notes in favor of the plaintiffs, as would have been the case in the usual course of an agent making a collection or settlement with the debtor of a claim of the principal. The undisputed facts, however, as disclosed by the record in this case, must, of necessity, control. The form of the note is immaterial. The results of the transaction are most material. It is undisputed that Fisher was obtaining and securing the signature of Meyer Kline on the notes herein sued upon, for the use and benefit, and for and on behalf of the plaintiffs in this case.

The third ground relied upon by appellants is that the notes were not delivered to the alleged principal in the way of an agent delivering the principal's property to the principal. Counsel further state that the notes were endorsed in usual course by the payee, and the payee received full credit on his indebtedness in a corresponding amount of his own notes in exchange.

The undisputed testimony, however, in this case, established the fact that the notes were in reality actually and in fact to be and become the property of plaintiffs, and to stand in the stead of and in lieu of the account alleged to be held by the bank against Fink & Kline, by and through the assignment of the said account to the

bank, by Fisher Cotton Company. So, in contemplation of law and in fact, the notes likewise were to be and become, and were secured on behalf of the plaintiffs in this case.

Likewise, the undisputed testimony shows that plaintiffs delivered nothing whatever of value, or otherwise, to the Fisher Cotton Company, for the notes, but later, on the recasting of his indebtedness, the bank delivered to the Fisher Cotton Company a corresponding amount of the Fisher Cotton Company notes in exchange, first, however, requiring the Fisher Cotton Company to endorse the Kline notes, which in fact and truth, and as a matter of law, retained the liability of Fisher by reason of the said endorsement to the plaintiffs as if they had retained the original notes for which the Kline notes were taken in renewal. But we say this is immaterial for the purposes of this discussion, inasmuch as the transaction, in its inception, and the fruits thereof, were in reality for the use, benefit and on behalf of plaintiffs herein.

The next ground advanced by appellants is that, as a matter of fact and in truth, Fisher was acting in his own interest. In refutation of this statement, the undisputed testimony of both Mr. Kretschmar and Mr. Fisher, discloses the contrary. Counsel likewise say that Kline must have known, certainly he ought to have known, that the notes would be accepted only in ignorance of those agreements, but we respectfully submit that what he ought or should have known is not the inquiry in view of the established fact that under no other consideration would Kline sign the notes except on the guarantees and assurances contained in the letter of May 18th.

The interests of Fisher were the interests of Kreschmar, and Kretschmar's interests were positively those of the plaintiffs. The whole actuating motive in the entire transaction was an effort on behalf of Kretschmar to derive a benefit for the bank through the execution by Kline of the notes in question. Unfortunately for the plain-

tiffs in this case, in securing the alleged benefit, a palpable fraud was committed on the defendant.

Had Kretschmar perpetrated some fraud on the bank, and in so perpetrating a fraud, for his own use and benefit, the rule of law as announced in *Cooper* v. *Robertson,* perhaps would have some application, but this is the case of a fraud being perpetrated on the defendant, M. Kline. The authorities herein above cited, we take it, are applicable.

Certain it is that but for the act of the plaintiffs in this case, through Kretschmar in authorizing Fisher to make the settlement with the defendant, the fraud would not have been perpetrated. Plaintiffs made the fraud possible, and even though we may easily presume that the plaintiffs herein would not have given specific directions to Fisher to make the fraudulent misrepresentations which he did, nevertheless the well-established rule that if two innocent persons must suffer by reason of a fraudulent transaction, the one who makes the fraudulent transaction possible, must be the sufferer, applies with peculiar force in the case at bar. *Bank* v. *Bennett,* 111 Miss. 26; *Staton* v. *Bryant,* 55 Miss. 261; 21 C. J. 1172, et seq.; 1 Story Eq. Juris, 367 and 387; 7 Am. & Eng. Encyc. Law, 18; Bump's Kerr on Frauds and Mistakes, pp. 138, 139.

NOT HOLDER IN DUE COURSE. Plaintiffs in this case cannot claim that they are holders in due course. In the inception of the transaction and on the established facts, the transaction has the complexion as if the plaintiffs themselves had made the representations to the defendant. Having done so, and being the holders of the notes, they cannot claim to be holders in due course.

It makes no difference whether plaintiffs had actual knowledge or not, constructive knowledge is sufficient. The transaction before the court does not partake of the nature usually described as a negotiation of an instrument. The instrument, in reality, was never negotiated to the plaintiffs in this case, because the plaintiffs in this case, in reality, secured and obtained the notes from

the defendant, through the agent of the plaintiffs, who was authorized to secure the notes for and on their behalf. The plaintiffs therefore are not in the position and attitude of one to whom a negotiable instrument has been negotiated for value, without notice. Hemingway's Code, section 2630, 2633, 2636.

No Value. Mr. Kretschmar and Mr. Fisher both testified that when the notes were delivered to Mr. Kretschmar by Mr. Fisher he received nothing whatever of value therefor, but were delivered to Mr. Kretschmar to do with them as he pleased, and at his instance and request. It does appear that some time later, that is to say, on or about June 8, 1921, at the time of the organization of the new Commercial Bank, the indebtedness of Fisher was recast, and at that time, Fisher was required to endorse the Kline notes, and give new notes for his other past due indebtedness, and an equal amount of his notes delivered to him in lieu of the Kline notes, which he had endorsed, thereby retaining the liability of Fisher Cotton Company for the exact amount by reason of his endorsement of the notes surrendered.

In *Merchants & Farmers Bank* v. *Winona,* 106 Miss. 471, 64 So. 210, the court held that under facts similar to this that the bank could not be a *bona-fide* holder. This transaction did not even partake of the nature of taking the notes as security for a pre-existing indebtedness. In the case above cited, the court held that delivering property merely as security for a pre-existing debt does not constitute the holder a purchaser for value.

We, therefore, submit to the court that under no possible hypothesis could the plaintiffs in this case be deemed to be holders in due course such as would destroy the equities and defenses existing between their agent, Fisher, and the defendant herein, M. Kline. We respectfully submit to the court that under the facts clearly established and without contradiction by the plaintiffs themselves, through the witnesses, Kretschmar, Anderson, Jake Fink and Fisher, the peremptory instruction asked for and granted by the learned lower court, was

entirely proper.  There was no question to be submitted to the jury, but was, under undisputed facts, clearly a question of law for the determination of the court.

PLAINTIFFS SUING AS TRUSTEES.  We have been unable to ascertain any provision in the law which would authorize the State Banking Department, or a court, through the agency of the State Banking Department, to appoint trustees for the liquidation of the bank.  A board of bank examiners is provided for the liquidation of banks.  Unless the trustees herein are, by the statutes of this state, authorized to engage in and upon the transactions sought to be engaged upon by them, as trustees, then they are wholly and totally unauthorized so to do.  They do not purport to act as an agent, but do purport to act as trustees under and by virtue of an appointment of the chancery court.  The court was without jurisdiction and without authority under the banking laws of the state of Mississippi, to appoint trustees when the law provides otherwise, and a full scheme of legislation is provided for this purpose, which does not include the procedure as shown by the record in this case.

This is, of course, purely a technical objection.  We think, however, that in view of this fact, and in view of the lack of authority of the plaintiffs to act at all, they were without authority to sue the defendant herein, claiming any right, title or interest in and to the notes.  We commend the law relative to a liquidation of banks under the State Banking Laws, to the court, with the assurance that no such provision can be found.

LACK OF NOTICE NOT ESTABLISHED.  This cause was instituted by plaintiffs, Sims, Kretschmar and Metcalf, as trustees.  Only one of said trustees testified in this cause in an effort to show that neither of the trustees had any notice or knowledge of the fraud perpetrated on the dedefendant, M. Kline.  See Hemingway's Code, section 2637.

Therefore, if we were to admit, for the sake of argument, that the notes in question were negotiated to plaintiffs, Sims, Kretschmar and Metcalf, trustees, yet when

it is shown that the title of Fisher was defective, then the burden of proof was on the trustees, and each of them, to show that they had no notice whatever of any such defect.

Mr. Kretschmar alone testified in this regard, and he testified that the notes were delivered to him by Mr. H. K. Fisher. Therefore, unless the proof in the case shows that the trustees acquired the title as the holder in due course, a peremptory instruction should have been granted.

The fact that Kretschmar had no notice does not prove by *innuendo,* or by hypothesis, that neither Sims, nor Metcalf, knew anything about the transaction, though they were all three, according to the claim of appellants, the duly appointed and acting trustees in the transaction. These facts being shown by the undisputed evidence, it cannot be said that plaintiffs have made out their case and met the burden imposed upon them by the statute. The testimony of one is not sufficient. The testimony of all is necessary.

We respectfully submit, however, that on the strict merits of the case, disconnected from any technical objection thereto the defendant herein was entitled to the peremptory instruction asked under the admitted facts, and under all the well-established laws of the state of Mississippi, and ask, therefore, that the learned lower court be, in all respects, affirmed.

Argued orally by *H. H. Elmore,* for appellants, and *J. W. Cutrer,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

R. N. Sims, W. P. Kretschmar, and Harley Metcalfe, as trustees, brought suit against the appellee, M. Kline, on three promissory notes for ten thousand dollars each, payable to the Fisher Cotton Company, or bearer, dated May 18, 1921, and maturing six, twelve and eighteen

months after date, respectively, payable at the Commercial Savings Bank of Greenville, Miss., which notes were indorsed in blank by the Fisher Cotton Company.

It was alleged that the notes passed into the hands of the trustees and at the time of the filing of the declaration that said notes were past due; that before the maturity of he notes plaintiffs became the holders and owners of said notes for a valuable consideration, in due course, and prayed for judgment for the amount of said notes with interest and attorneys' fees.

The defendant filed a plea of the general issue, and gave notice under the general issue that he would prove that the notes were signed and delivered to the Fisher Cotton Company without consideration or anything of value moving from the Fisher Cotton Company to the defendant, and that the defendant received nothing from the Fisher Cotton Company, nothing of value for and on account of his placing his said name upon the said writings; that same were wholly without consideration and void; that the plaintiffs, each and all and severally, had full knowledge and notice before they each took or received the said writings that they were without any consideration valuable or sufficient in law to support them; and that, by reason of said facts, the plaintiffs should not maintain such suit.

It is further alleged that the indebtedness for which the notes were given was an indebtedness owing to the Fisher Cotton Company by Guy E. Waldrop and Joseph Fink, for which the defendant was in no wise liable, and that the Fisher Cotton Company, with the knowledge of the Commercial Saving Bank, and through the said bank, and with notice to plaintiffs, desired to secure the indorsement of the defendant for the said Waldrop & Fink, a firm composed of the said Guy E. Waldrop and Joseph Fink, and agreed that said Waldrop & Fink would sign the notes before said notes should become effective, and that the liability of the defendant was conditioned and contingent upon the signing by said Waldrop & Fink, as makers thereof, and that all of said facts were well known

to the Commercial Savings Bank, and notice was given to plaintiffs before these notes came into their possession, and that the said Fisher Cotton Company did not secure the signatures of the said Waldrop & Fink.

It is further alleged that, before the notes were signed by the defendant, the Fisher Cotton Company agreed in writing with the defendant that no suit would ever be brought on the notes against the defendant in order to collect said notes; and that, among other reasons for signing said notes and agreeing to become an indorser thereon, or surety, for the payment thereof, the defendant relied upon the written agreement of the Fisher Cotton Company not to sue on said writings; and that said agreement of the Fisher Cotton Company was known to the plaintiffs before they received delivery of said notes from the defendant.

It is further alleged that the said notes were not signed or delivered to the Fisher Cotton Company by the defendant, according to the tenor of said instruments, but that actually and in fact the notes were obtained from the defendant by fraudulent misrepresentations and inducements by the said Fisher Cotton Company, which said fraudulent misrepresentations and inducements were well known to the plaintiffs, and of which the plaintiffs had notice at the time they obtained and undertook to acquire the notes, and that, because of said fraudulent misrepresentations, the defendant is not indebted to the plaintiffs.

There were also special pleas denying the execution of the notes and alleging that said notes were obtained by fraudulent misrepresentations, etc.

At the conclusion of the evidence for the plaintiffs there was a motion for a peremptory instruction which was sustained by the court, and judgment rendered against the plaintiffs.

The facts are long and complicated, but, as the case turns upon the sufficiency of the evidence of the plaintiffs to go to the jury on the issues involved, a general statement of the facts will be made.

The Fisher Cotton Company did a cotton business at Greenville, Miss., and surrounding country. Joe Fink and M. Kline were partners in business at Merigold, Miss., engaged, among other things, in buying cotton. Joe Fink and Guy Waldrop were also partners engaged in business, among other things in buying cotton. Kline, in addition to being a partner of Joe Fink at Marigold, Miss., was engaged on his own account in business at Alligator, Miss.

In the spring of 1920 the Fisher Cotton Company secured the services of Guy Waldrop of the firm of Fink & Waldrop to buy some cotton at Helena, Ark., for the account of the Fisher Cotton Company. Some of the cotton so bought was rejected by the Fisher Cotton Company, and the cotton so rejected amounted to some thirty-seven thousand dollars. This acount was carried by the Fisher Cotton Company under the name of Fink & Kline, and the accounts were made out on the stationery of Fink & Kline and rendered to the Fisher Cotton Company.

The Fisher Cotton Company was indebted to the Commercial Savings Bank of Greenville, Miss., in approximately the sum of two hundred thousand dollars, secured only in part, and the account against Fink & Kline, carried on the books of the Fisher Cotton Company, was assigned to the Commercial Savings Bank. After this assignment was made, the papers were turned over to H. J. Fisher of the Fisher Cotton Company to adjust or collect, and were given to Fisher for such purpose prior to the closing of the Commercial Saving Bank for liquidation, and the claim was placed in the hands of attorneys for collection or suit prior to the closing of the Commercial Savings Bank for liquidation.

The Commercial Savings Bank was closed for liquidation March 18, 1921, and W. P. Kretschmar, one of the plaintiffs, was placed in charge of liquidating the bank for the state banking department. The attorneys having the claim notified Kline thereof and demanded payment and threatened suit. It was in testimony for plaintiffs that Kline thereupon went to Jake Fink, a

brother of Joe Fink, of the firm of Fink & Kline, to get him to adjust the matter with the Fisher Cotton Company. Jake Fink thereupon called up the attorneys having the claim and asked that he be allowed to take up the matter with the Fisher Cotton Company direct, which permission was granted. Thereupon Jake Fink went to Greenville, Miss., to see the Fisher Cotton Company, and it was agreed between the Fisher Cotton Company and Jake Fink that Jake Fink might also represent Fisher in the matter, and that it should be closed up on the basis of the three notes signed by Kline for ten thousand dollars each. Fisher also stated to Jake Fink that if it was closed up in that manner it would enable the Fisher Cotton Company to carry on its business and to get banking accommodations at Greenville, Miss., and this was communicated to Kline. It was also stated to Jake Fink and by him to Kline that, if he was not able to pay the notes at maturity, such notes could be removed, and that he (Kline) would not be pressed for payment. Mr. Kline desired this agreement to be put in writing, and the following letter was addressed to Jake Fink by the Fisher Cotton Company:

"May 18, 1921.

"Mr. Jake Fink, Clarksdale, Miss.—Dear Jake: We inclose three notes for ten thousand dollars each, for you to get Mr. Kline to sign, as per your settlement with him. You will note that the notes are dated six, twelve, and eighteen months.

"Mr. Anderson, the state bank examiner, called me in session with him in reference to these notes, and said he would recommend the acceptance and use as collateral with the new Commercial Bank, that with those notes it would put us in the position to get the new bank to take our account. He asked that we do this at once. We told him we would go to Clarksdale and have you get the notes signed and have them here for him next week.

"We have him and Mr. Kretschmar's assurance that Mr. Kline will not be bothered with any suit, if he finds it is impossible to take the notes up when due; we told

them that under no circumstances would we consent to any suit in the matter, and with the comeback we have, Jake, think by the time the first one is due we will be in such shape that we can handle the notes ourselves. Mr. Anderson passed you and Mr. Kline quite a compliment; said he knew of no two more resourceful men in the delta, and that in time you both would be back where you were.

"Please get the notes signed and return to us as quickly as possible, for it means whether we have a bank to bank with or not in this community. The notes will put our account in shape that the new organization will take the account over, and we can then have a bank to do business with, otherwise we will have to leave Greenville.

"We are counting on you having the notes here by Monday as Mr. Anderson says he wants them by then, so he can instruct Mr. Kretschmar how to handle our account. There will be no bother to Mr. Kline; if he is unable to meet the notes when due they can be renewed.

    "Sincerely yours,
       . "[Signed]   Fisher Cotton Company."

The notes were thereupon signed by Kline and delivered to Jake Fink, who transmitted them to the Fisher Cotton Company, in a letter dated May 19, 1921, reading as follows:

    "Clarksdale, Miss., May 19, 1921.

"Fisher Cotton Company, Greenville, Miss.—Dear Mr. Fisher: Just received your registered letter and at once got in touch with Mr. Kline. I assured him that you will see that he will not have to take up more than one note each year as you readily understand that this is the settlement that you and I agreed upon, but I impressed Kline that it will be an accommodation to you and indirectly will favor me. Inclosed you will find notes signed by Kline as per your request.

"With best wishes, always your friend,
           "[Signed] Jake Fink."

The Fisher Cotton Company thereupon took the notes to the bank and delivered them in part payment of its account.

Kline testified that it was understood and agreed that Joe Fink and Guy Waldrop were also to sign the notes, but that was denied by Jake Fink.

The Commercial Savings Bank being in liquidation, Mr. Kretschmar took up the question of liquidating the bank through a plan of organizing a new bank to take over the accounts of the depositors, in consideration of certain of the accounts of the bank in liquidation being assigned to the new bank to be organized, and certain other assets were to be taken over by creditors of the bank in liquidation in satisfaction of the claims of the creditor banks. This plan of liquidation was approved by Mr. Anderson of the state banking department, and the new bank was organized and took over the assets scheduled under the plan for the purpose of securing the new bank in taking over the deposits of the depositors of the bank in liquidation, and the lists of assets which were to secure the creditor banks' claims against the bank in liquidation were turned over to the trustees. Among these assets were the notes here involved, and the claims of the creditor banks were surrendered and the liquidation procedings closed. The whole scheme of liquidation above stated was presented to and approved by the chancery court of Washington county having charge of the liquidation of the said Commercial Savings Bank in liquidation.

Mr. Fisher of the Fisher Cotton Company testified as a witness, and stated that the contents of the letter above set forth to Jake Fink, to the effect that he had the assurance of Mr. Kretschmar that Mr. Kline would not be bothered by any suits, and that if the notes could not be paid when due no suits would be brought, were false, and that he had no such understanding with Mr. Kretschmar or with Mr. Anderson in charge of the bank in liquidation.

Mr. Anderson and Mr. Kretschmar testified that they knew of no such representations on the part of the Fisher Cotton Company, and that they had no understanding with the Fisher Cotton Company to that effect, and that they took the notes in part payment of Fisher's account

with the bank in liquidation, and that, when the plan and agreement was worked out in liquidation by which the trustees were to take these notes and others for the satisfaction of the claims of the creditor banks, they had the Fisher Cotton Company indorse these notes.

Mr. Kline testified that he had nothing to do with the buying of the cotton at Helena, Ark., by Guy Waldrop of the firm of Fink & Waldrop, and that he had no connection with the firm of Fink & Waldrop, and that he was not liable for the account, and that the Fisher Cotton Company had no authority to charge Fink and Kline with the said account.

There is no contention that the creditors of the Commercial Savings Bank knew of any defenses to these notes when the scheme was worked out by which they agreed to take certain listed assets of the bank, including the three notes here involved, in satisfaction of their claims against the Commercial Savings Bank in liquidation.

It will be seen from this statement of facts that the Fisher Cotton Company had an account upon its books against Fink and Kline for more than thirty thousand dollars which it had assigned to the Commercial Savings Bank as collateral security, and that this claim had been placed in the hands of attorneys for suit, and that it would be claimed in the said suit that Kline was liable to the Fisher Cotton Company on this account. Kline was desirous of adjusting the matter, and gave the notes under the circumstances above stated.

A careful perusal of the letter above set out, relied upon by Kline to show that he signed the notes with the understanding that he would not have to pay them and that he would not be sued thereon, shows that it was stipulated in the letter that Kline would be allowed to renew the notes when they were due. The letter further shows that the Fisher Cotton Company expected to be able to take the notes up if the arrangement was made. But we do not think that the letter, fairly construed, means that Kline would never be called upon to pay the

notes. It was shown in the face of the letter that one of the purposes of the Fisher Cotton Company in getting the notes was to place its account in such shape that the new bank would take the account over, and that they would have the new bank at Greenville to do its banking business with.

Of course these notes would have to be paid at some time, and the correspondence in the record shows that the interest was to be paid when due and the notes renewed. The stipulations in the letter show that it was expected that the notes would be taken up if Mr. Kline was able to do so without being unduly pressed.

The peremptory instruction granted proceeded in part at least upon the theory that notice to the Fisher Cotton Company was notice to the bank and to the trustees for the creditor banks of the true state of the dealings between the Fisher Cotton Company and Fink & Kline. It is clear that Fisher, representing the Fisher Cotton Company, was interested in taking care of its personal interests in these transactions.

In the case of *Cooper* v. *Robertson Investment Company,* 117 Miss. 108, 77 So. 953, it is held that, where the agent was personally interested, notice to the agent under such circumstances would not be notice to the principal with whom he was dealing.

In 31 Cyc., p. 1595, it is stated: "The rule that notice to an agent is notice to the principal, being based upon the presumption that the agent will transmit his knowledge to his principal, the rule fails when the circumstances are such as to raise a clear presumption that the agent will not perform this duty, and accordingly where the agent is engaged in a transaction in which he is interested adversely to his principal, or is engaged in a scheme to defraud the latter, the principal will not be charged with knowledge of the agent acquired therein."

In the case of *Cooper* v. *Robertson Investment Company,* 117 Miss. 108, 77 So. 953, *supra,* under the facts stated in the said case, the court held that, where the president of a bank gave a deed to the bank in settlement

of a debt due by him to it, the bank was not chargeable with the president's knowledge of a prior unrecorded bond for title given by the president to the defendant, nor was its title affected by such bond, because of the fraudulent scheme entered into by the president and defendant, as a part of which the bond for title was executed; and, second, because the bank was a purchaser from its president for value without notice of defendant's claim—it not being chargeable with the president's knowledge thereof, since, where an agent is engaged in a transaction in which he is interested adversely to his principal, or is engaged in a scheme to defraud the latter, the principal will not be charged with knowledge of the agent acquired therein; third, because, by agreement between the president and the defendant, the bond for title was expressly canceled, and it is not competent to vary the terms of that contract by showing a contemporaneous parol agreement that the bond should remain in force.

In our opinion there is sufficient evidence for the plaintiffs to carry the case to the jury for its decision upon the issues involved, and it was error for the court below to grant the peremptory instruction for the defendant.

The judgment of the court below will therefore be reversed, and the cause remanded for a new trial.

<div align="right">

*Reversed and remanded.*