Deposit Guaranty Bank & Trust Co. *v.* Silver Saver Stores, Inc.

(Division A.  May 29, 1933.)

[148 So. 367.  No. 30518.]

884

Geo. E. Shaw and M. A. Pilgrim, both of Jackson, for appellant.

Carter Stirling, Roy Arnold and Leonard Calhoun, all of Jackson, for appellee.

**McGowen, J.**, delivered the opinion of the court.

The appellee, Silver Saver Stores, Inc., a trading corporation or trader, brought suit for damages against the Deposit Guaranty Bank & Trust Company, the appellant, for dishonoring six checks aggregating about one hundred eighteen dollars and forty-five cents, on July 25, 1932. On issue made up, the case was submitted to a jury, which returned a verdict for the Silver Saver Stores, Inc., against the bank, for the sum of seven hundred fifty dollars, and judgment was rendered accordingly.

These facts are undisputed: That on July 25 and 26, 1932, there was a sufficient amount of money on deposit in the Deposit Guaranty Bank & Trust Company to the credit of the Silver Saver Stores, Inc., to pay the checks which were dishonored, leaving out of view the fact that on the 26th day of July, 1932, John Hart Ascher, a teller of the bank, cashed a check in which he was named as payee, credited same to himself and his mother, and did not charge the check to the drawer. That, on several occasions, before that time, the bank had dishonored checks drawn by the Silver Saver Stores, Inc., at a time when it did not have sufficient funds on deposit with which to pay such checks.

It is admitted that two checks of the depositor were dishonored on July 25, 1932, by the teller, Ascher, in order to insure the bank that there would be sufficient funds on hand to pay the one hundred dollar check.

It is also undisputed that the Silver Saver Stores, Inc., gave its check on the bank for one hundred dollars on July 14, 1932, to pay the rent due to Ascher and his mother, for the lease of a building from them in which it carried on a mercantile business. This check was postdated July 18, 1932, and around this check clusters the controversy in this case.

On July 18, 1932, Thomas, the president of the Silver Saver Stores, Inc., sent an employee, McGuffee, to the bank with a deposit in excess of one hundred forty dollars, directing him to notify the bank not to pay the check drawn in favor of Ascher, and if the bank would not stop payment of this check until the latter part of next week, that McGuffee was not to make the deposit. According to McGuffee's evidence, he made known these facts to Ascher, the teller on duty at the window of the bank; that Ascher at first demurred, but finally agreed that the bank would hold, or stop payment of, the check as requested, and would not cash same; but that he did not agree to this until he found out that McGuffee would not make the deposit unless it was agreed to.

There was evidence tending to show that the credit of the Silver Saver Stores, Inc., was impaired by the turning down of these checks.

Ascher says that McGuffee came with a deposit and told him he would not make the deposit unless payment of the one hundred dollar check was stopped, and "if I insisted on the payment of the check. I told him that so far as I was concerned, the bank owned this check and insisted on the payment of it, . . . and he personally guaranteed me that if I would hold this check up or

have it charged back to my account, he would pay this check Monday morning, on July 25th, and after he gave me his personal guarantee, I had this check turned back to me." Ascher said, as teller of the bank, at nine-twenty A. M. July 18th, he credited to himself and his mother, fifty dollars each, as the proceeds of this check, and that, with the knowledge of the officials of the bank, he carried that check as a cash item, and did not charge it to the Silver Saver Stores, Inc., account until July 26, 1932. The bank, according to the testimony of Mr. Swann, knew of this situation, and approved Mr. Ascher's action in the matter. Ascher admitted that he turned down checks on the 25th in order to be sure that the depositor had enough funds on deposit with which to pay this one hundred dollar check.

Over the objection of the bank, the plaintiff in the court below was permitted to introduce the following testimony:

"A. He (meaning John Hart Ascher) came to get his August rent, and I told him one day—'John, you have absolutely ruined us down here—I don't see how we are going to get by—turning those checks down. We can't get credit and we are blowed up.' He says, 'I don't give a damn what you do with the bank—all I want is my money. I don't care if the bank pays you a hundred thousand dollars in that case—all I want is my money, and I want it now.' That is what he told me in August.

"By the Court. That was with reference to the payment of his check and turning down of these others? A. Yes, sir, and after the lawsuit.

"By the Court. I reckon that is competent."

The bank made a motion for a new trial, but did not, in that motion, raise the question of the competency of this evidence in any manner, and is now urging that error in this court.

1. The appellant bank insists that it was entitled to a peremptory instruction, because the teller, Ascher, if he made the agreement testified to by McGuffee, was acting in his own interest and against the interest of the bank, citing Scott County Milling Co. et al. v. Powers, 112 Miss. 798, 73 So. 792; Cooper v. Robertson Investment Co., 117 Miss. 108, 77 So. 953; and Sims v. Kline, 139 Miss. 246, 104 So. 85.

We do not think there is any merit in this contention, for the reason that the only irregularity of Ascher, the teller, was in carrying the check as a cash item instead of charging it to the account of the Silver Saver Stores, Inc., on July 18th. The bank, of necessity, knew, and it is admitted that the officials of the bank did know, that this item was being so carried. Ascher was bound to communicate to the officials of the bank notice of the fact that he and his mother had received credit from the coffers of the bank for the total sum of one hundred dollars, and that the bank had no corresponding debit. But, Swann said the bank had knowledge of this fact and had approved the transaction.

The rule is well settled, except, perhaps, in one or two jurisdictions, that a check is a simple, written order to make a certain payment; it is executory, and as such, of course, is revocable at any time before the bank has paid or committed itself to pay it, but after the bank has paid, or placed itself under an obligation, or has incurred a liability, to comply with the order, the drawer's power to revoke it is at an end. People's Bank v. Lacy, 146 Ala. 688, 40 So. 346. As sustaining this proposition, see 5 Michie on Banks and Banking, page 354, section 193; 1 Morse on Banking (4 Ed.), section 398; and Louisville Banking Co. v. Paine, 67 Miss. 678, 7 So. 462.

It will be observed that there was a straight issue of fact between Ascher, the teller, and McGuffee, and that this issue was submitted to the jury.

The most serious question in this case is whether or not notice to a teller is notice to a bank. Generally, in order to serve notice on a bank, the cashier is regarded as the proper official thereof upon whom notice can be properly served. But, in a matter of payment or non-payment of checks, where a teller has refused to pay a check, or receive a deposit, we think that one dealing with a bank and a teller actually engaged in that duty would have a right to act upon the apparent authority vested in a teller in the discharge of his duty. The teller in this case was not limited. He was both a paying and a receiving teller, and it was not shown that the cashier had anything to do with the payment of checks. The rule is that a teller, and others, such as bookkeepers, etc, act under special or express authority, and their acts bind the bank only when they are within the line of their authority. But the acts of minor officials, within the scope of their authority, are binding on the bank, as are also their declarations within their proper fields of employment. See 7 C. J. p. 559, section 165; People's Savings Bank v. Lacy, 146 Ala. 688, 40 So. 346.

So that notice of an oral stop order from the plaintiff, as was given in this case to the teller of the bank, was valid, and the peremptory instruction was properly refused.

2. It is urged that the court erred by its instruction not limiting the jury to the question of actual damages, but permitting the jury, in its discretion, if they regarded the dishonoring of the checks as willful wrong, to allow punitive damages. We need only to call attention to the fact that Ascher, himself, testified that he dishonored checks on the 25th, for the sole purpose of building up a fund sufficient to pay the bank's check for one hundred dollars on the following day. This evidence warranted the jury in finding, if they saw fit, that the action of the bank

was willful or oppressive. See American Express Co. v. Bailey, 142 Miss. 622, 107 So. 761, and Grenada Bank v. Lester, 126 Miss. 442, 89 So. 2.

3. It is next urged that the court erred in permitting the conversation at the store between Thomas, the president, and Ascher, some time in August, after the lawsuit had been brought. This conversation was in no wise connected with the bank. When Ascher went to appellee's store on that occasion, it was on his own account and on his own business, as the conversation clearly indicates. The declaration of an agent, after the happening of an event, is not competent and not binding upon the principal. See Vicksburg & M. R. R. Co. v. McGowan, 62 Miss. 682, 52 Am. Rep. 205, and Gulf M. & N. R. R. Co. v. Hudson, 142 Miss. 542, 107 So. 369.

We think, however, that the admission of this testimony, as set forth in extenso in the statement of facts, was inflammatory and calculated to influence the jury, and both as to the liability and as to the amount of damages it was incompetent. From any standpoint, it was highly prejudicial to the appellant and constitutes reversible error.

It is further insisted that, because the appellant made a motion for a new trial in the court below and did not include this question therein, it cannot be presented here for the first time, and the case of Carpenter v. Savage, 93 Miss. 233, 46 So. 537, is relied on. It is sufficient to say that this case was decided before this court adopted rule 6, par. 3, now in force, reading as follows: "The right of an appellant to obtain a review in this court of any ruling made in the trial court shall not depend, in any wise, upon his having filed in such court a motion for a new trial, or if such motion has been filed, upon the grounds thereof being distinctly specified." Under this rule it was not necessary to enter a motion for a new

trial, neither was it necessary, if he did file a motion, for it to distinctly specify the particular grounds therein.

There is no merit in the other errors assigned in the briefs.

Reversed and remanded.