628 So.2d 1355 (1993)
Georgia S. KIDDY
v.
Larry R. LIPSCOMB, M.D. and South Jackson Woman's Clinic, P.A.
No. 91-CA-0091.
Supreme Court of Mississippi.
October 7, 1993.
Rehearing Denied January 20, 1994.
*1356 James H. Herring, Herring Long & Joiner, Canton, for appellant.
Jimmie B. Reynolds, Jr., Steen Reynolds Dalehite & Currie, Jackson, Michael F. Myers, Steen Reynolds Firm, Jackson, for appellee.
Before HAWKINS, C.J., and SULLIVAN and McRAE, JJ.
McRAE, Justice, for the Court:
This appeal arises from a December 20, 1990, order of the Hinds County Circuit Court denying Georgia S. Kiddy's motion for a new trial in a medical malpractice action against Dr. Larry R. Lipscomb, M.D. and the South Jackson Woman's Clinic, P.A. Finding that the circuit court abused its discretion under either M.R.C.P. 21 or 42(b) by severing Mrs. Kiddy's claims against a second physician involved in the incident, Dr. Milan Chepko, we reverse and remand with instructions that the two actions be joined pursuant to M.R.C.P. 20. We further take this opportunity to reiterate that pursuant to M.R.C.P. 59, when the trial court has had the opportunity to rule on a matter, particularly during trial or a hearing, this Court will consider an assignment of error on appeal regardless of whether it was raised in the motion for new trial.

I.
On August 22, 1987, Dr. Larry Lipscomb attempted to perform an abortion on Mrs. Georgia S. Kiddy, then six weeks pregnant, at the South Jackson Woman's Clinic. In his post-operative report, Dr. Lipscomb questioned whether the procedure had been successful, but assured Kiddy that there were no problems. According to the Clinic's records, Kiddy was instructed to return for a follow-up appointment on September 1, 1987. Kiddy, however, asserts that no such appointment was made.
Kiddy returned to the Clinic on September 4, concerned that she was still pregnant. She tested positive on the pregnancy test administered at that time. Dr. Lipscomb, however, told her that patients frequently tested positive at the follow-up visit and sent her home without further testing or care.
Kiddy continued to experience serious pain and bleeding. Suspecting that she was still pregnant, she administered two home pregnancy tests on September 26, 1987, both of which registered a positive reading. She called Dr. Lipscomb and saw him again on September 28, 1987. He told her to return a few days later for a second procedure. Instead, she went to a local hospital where still another pregnancy test showed positive results, indicating that the abortion had been incomplete.
*1357 Having lost faith in Dr. Lipscomb, Kiddy made an appointment at the New Woman's Clinic, where Dr. Milan Chepko attempted a second abortion on October 3, 1987. Kiddy suffered serious complications and was admitted to Mississippi Baptist Medical Center the next day. She was treated by Dr. Freda Bush, an obstetrician and gynecologist who was on call that evening. Kiddy was released on October 5. After further out-patient visits with Dr. Bush, Kiddy was readmitted to the hospital on October 10, 1987, where she was treated by Dr. Bush's associate, Dr. Beverly McMillan. She was released the next day, but again was taken to the emergency room on October 13, 1987. Dr. McMillan performed emergency surgery at that time, removing a large quantity of placental matter from Kiddy's uterus.
Kiddy filed suit against Dr. Lipscomb, and his solely-owned clinic, the South Jackson Woman's Clinic, P.A., on June 20, 1988. She alleged that on August 22, 1987, Dr. Lipscomb negligently failed to perform a complete abortion on her. Kiddy later amended her complaint to join Dr. Milan D. Chepko, M.D., of the New Woman's Clinic as a defendant because the cause of action against both doctors arose from the same transaction or occurrence and because Dr. Lipscomb owned a one-third interest in the New Woman's Clinic. Dr. Lipscomb and the South Jackson Clinic filed a motion to bifurcate the causes of action. He asserted that he would be unfairly prejudiced by the joinder of Dr. Chepko, who had been indicted in a highly-publicized child pornography case. Dr. Chepko joined in the motion, to which Kiddy objected. The trial court denied the motion, with the reservation that the motion would be granted if Dr. Chepko were convicted prior to the scheduled trial date. Upon Dr. Chepko's conviction, the trial court entered an amended order to sever the cases. Subsequently, Kiddy's case against Dr. Lipscomb was heard by a jury in November, 1990, which returned a verdict in his favor. The circuit court then denied Kiddy's motion for a new trial.

II.
Kiddy first asserts that the circuit court abused its discretion in severing her cases against Drs. Lipscomb and Chepko. She filed her initial complaint against only Dr. Lipscomb and the South Jackson Woman's Clinic. More than a year later, she was granted leave of court to amend her pleadings to join Dr. Chepko as a defendant pursuant to M.R.C.P. 19(a)(1) because the issues of liability and damages could not be separated between the doctors.[1] Joinder probably should have been granted instead under M.R.C.P. 20. Since it is the severance of the defendant's trials that is at issue, we make no determination on the issue of joinder except to note that by allowing joinder under Rule 19(a)(1), the trial court apparently thought that the cases could not be tried separately.
On May 16, 1990, Dr. Lipscomb filed a motion to bifurcate the proceedings. He asserted that he would be prejudiced by any affiliation with Dr. Chepko, who had been indicted on child pornography charges. After Dr. Chepko was convicted, the circuit court ordered the actions severed pursuant to M.R.C.P. 21.[2]
Kiddy asserts that the circuit court improperly granted the severance because the cases involve the same nucleus of common facts and arise from the same transaction or occurrence. We agree. The facts of the cases against the two physicians are too closely intertwined to warrant the time and *1358 expense of trying them separately. More importantly, allowing separate trials sets the scene for the two doctors to play a game of "divide and conquer." Dr. Lipscomb, without having to take any shots from Dr. Chepko, would be perfectly situated to point his finger at "the empty chair" and assert that all of liability for Kiddy's injuries stemmed from the second doctor's treatment. Dr. Chepko, at his trial, likewise without any opposition from Dr. Lipscomb, could then assert that Kiddy's injuries stemmed exclusively from the first procedure performed by Dr. Lipscomb. Bifurcation of the actions thus would prevent any jury from hearing all of the evidence relevant to Kiddy's injuries and the liability of the defendants and greatly increases the expense of litigation. Without both doctors as parties, the issues of liability and damages may be indeterminable. As we have stated, "there may be more than one proximate cause of an accident or injury, and where there is more than one proximate cause each of the concurrent efficient causes contributing directly to the accident or injury is the proximate cause thereof." Smith v. Dillon Cab Co., Inc., 245 Miss. 198, 206-206, 146 So.2d 879, 882 (1962). The Smith Court further explained that:
As a general rule, it may be said that negligence, in order to render a person liable, need not be the sole cause of an injury. It is sufficient that his negligence, concurring with one or more efficient causes, other than plaintiff's fault, is the proximate cause of the injury. Accordingly, where several causes combine to produce injuries, a person is not relieved from liability because he is responsible for only one of them, it being sufficient that his negligence is an efficient cause, without which the injury would not have resulted, to as great an extent, and that such other cause is not attributable to the person injured. It is no defense to one of the concurrent tort feasors [sic] that the injury would not have resulted from his negligence alone, without the negligence or wrongful acts of the other concurrent tort feasor [sic].
Id., quoting 65 C.J.S. 675, Negligence, Para. 110a. When there is more than one possible proximate cause of an injury, brought about by the negligence of more than one party, the purposes of the applicable rules best would be served by a single trial.
Despite his defense that Kiddy's damages flowed solely from the other physician's actions, Dr. Lipscomb asserted in his motion that he would be prejudiced by Dr. Chepko's involvement in the case. Under the circumstances, however, it would appear that retaining Dr. Chepko as a party would have been more advantageous than prejudicial to Dr. Lipscomb.
When applying our procedural rules governing severance, as well as joinder of parties or actions, we do not view individual rules in isolation. Rather, they must be considered in light of other applicable rules. Joinder of Dr. Chepko was appropriate under Rule 20, which provides for permissive joinder of parties "to promote trial convenience and expedite the final determination of disputes." Official Comment, Rule 20. Rule 20 requires only that the plaintiff's right to relief against each defendant arise from the same transaction or occurrence and that there is some question of law common to all of the parties. Id. Similarly, actions against Drs. Lipscomb and Chepko could have been consolidated under M.R.C.P. 42(a). Under these rules and the facts of this case, where parties or actions may be joined, denial of joinder or consolidation in the case sub judice would have been an abuse of discretion.
There is no showing that any party was prejudiced by the joinder of Dr. Chepko. However, the later severance of the claims against him served to prejudice Kiddy. Dr. Lipscomb certainly cannot claim prejudice since he was attempting to point the finger at Dr. Chepko on the issues of both liability and damages. It further would be contrary to the severance and separate trial provisions of Rules 42(b) and 21, which are intended to avoid prejudice and encourage convenience and economy. Accordingly, the circuit court abused its discretion in granting Dr. Lipscomb's motion for severance. This matter is therefore reversed with directions to consolidate the trials of Drs. Lipscomb and Chepko.

*1359 III.
In her motion for a new trial, Kiddy argued only that the verdict was against the overwhelming weight of the evidence; the jury was improperly instructed on the law; and that the Court improperly allowed her to be cross-examined about her activities at the local courthouse, which were irrelevant and prejudicial. Several of the assignments of error now before us, however, were not advanced as reasons for reversing the jury verdict in her motion for new trial.[3] Dr. Lipscomb and the Clinic therefore contend that Kiddy is precluded from raising any issues before this Court not expressly presented in her motion for new trial. We disagree.
Relying on Mississippi State Highway Commission v. Rives, 271 So.2d 725 (Miss. 1973) and Estate of Briscoe v. Briscoe, 255 So.2d 313 (Miss. 1971), appeal after remand, 293 So.2d 6 (Miss. 1974), Dr. Lipscomb asserts that Kiddy's appeal must be dismissed because the disputed evidentiary rulings made by the trial court were not included in her motion for new trial.[4] This is contrary to our interpretation of M.R.C.P. 59. It is clearly the better practice to include all potential assignments of error in a motion for new trial. However, this approach is not always practical. Because a trial transcript is rarely available within the time frame for filing post-trial motions, the most prudent attorney cannot be expected to pinpoint every objection raised and ruling made during the course of the trial. Thus, when the assignment of error is based on an issue which has been decided by the trial court and duly recorded in the court reporter's transcript, such as the admission or omission of evidence, we may consider it regardless of whether it was raised in the motion for new trial.
We have stated:

A motion for a new trial is only necessary to bring to the attention of the trial court matters not embraced in the rulings during the trial, as taken down by the stenographer; it being provided, among other things, in section 724, Code of 1930, as follows: "And in and by means of the court reporter's shorthand notes it shall be competent and effectual for the purposes of appeal and all otherwise, to make of the record every part of the proceedings arising and done during the trial, from the opening until the conclusion thereof, including motions so arising to amend the pleadings, except amendments to indictments, and the ruling of the court thereon and all other motions and steps that may occur in the trial, in addition to the oral testimony. And in such a trial, provided objections are duly made and noted, no exceptions need be taken either for the purposes of appeal or otherwise, or if taken shall not be noted, to any ruling or decision of the court, and this provision *1360 shall include the rulings of a court on objections to testimony. If any ruling or decision of the court as to any matter arising during the trial appear in the copy of the court reporter's notes, it shall not be necessary to take any exceptions or bill of exceptions."

Weyen v. Weyen, 165 Miss. 257, 268-9 (1931) (emphasis added). These principles were reiterated in Colson v. Simms, 220 So.2d 345 (Miss. 1969):
The appellees contend that even if the items of medical expense were provable by a local doctor, the appellant in this case could not argue this point on appeal, because, it is said, he did not raise this ground in his motion for a new trial. He cannot now, therefore, put the trial court in error on a point on which it had no opportunity to rule. This argument is not tenable: first  because the trial court did pass upon the issue and did not permit the introduction of the evidence; and second  it is not necessary to make a motion for a new trial in order to preserve the question for appeal where the error is the failure to permit the introduction of essential evidence. Deposit Guaranty Bank and Trust Co. v. Silver Saver Stores, 166 Miss. 882, 148 So. 367 (1933).
Id. at 346 (emphasis added). This view is consistent with the interpretation of Federal Rule 59, which is identical to the Mississippi Rule:
The settled rule in federal courts, contrary to that in many states, is that a party may assert on appeal any question that has been properly raised in the trial court. He is not required to make a motion for a new trial challenging the supposed errors as a prerequisite to appeal.

11 Wright & Miller, Federal Practice and Procedure, § 2812 (emphasis added).

IV.
Kiddy asserts that the circuit court erred in refusing to allow her expert witness to offer rebuttal testimony that certain medical treatises refuted by Dr. Lipscomb's expert were, indeed, authoritative. Although we have found that the circuit court's severance of the trials warrants the reversal of this case, we address this issue since there will be new trial. On both direct and cross-examination, Kiddy's expert in the field of obstetrics and gynecology, Dr. Beverly McMillan, testified that Dr. Lipscomb failed to meet established standards of care by not requesting a sonogram or sending tissue samples to a pathology laboratory when he initially suspected the abortion was not complete. Dr. Lipscomb's expert, Dr. James Martin, testified to the contrary. When confronted on cross-examination with a number of medical treatises which supported Dr. McMillan's opinion, Dr. Martin stated that he did not find them to be authoritative. Kiddy sought to recall Dr. McMillan for rebuttal testimony. The circuit court denied her request, stating that Dr. McMillan should have been questioned about the treatises as part of the case-in-chief.
The evidence Kiddy sought to introduce clearly was rebuttal testimony and not part of her case-in-chief. M.R.E. 611(b) provides for wide-open cross-examination not limited "to the subject matter of direct examination and matters affecting the credibility of the witness." It certainly was proper to first question Dr. Martin about the treatises on cross-examination since they were intended to refute his testimony regarding the standard of care Dr. Lipscomb should have followed. Dr. McMillan, who also was qualified as an expert in obstetrics and gynecology, was competent to offer rebuttal testimony about the authoritativeness of the treatises. The circuit court erred in not allowing her to do so.
We therefore reverse and remand this case for proceedings consistent with this opinion. Upon retrial, the circuit court is ordered to consolidate Kiddy's causes of action against Drs. Lipscomb and Chepko.
REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
*1361 HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
PITTMAN, J., concurs in results only.
NOTES
[1] M.R.C.P. 19(a) dictates when persons should be joined as parties in an action:

a. Persons to Be Joined if Feasible. A person who is subject to the jurisdiction of the court shall be joined as a party in the action if: (1) in his absence complete relief cannot be accorded among those already parties... .
[2] M.R.C.P. 21 provides as follows:

Misjoinder of parties is not grounds for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of it own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.
[3] On appeal, Kiddy assigned as error the circuit court's order bifurcating the actions against Drs. Lipscomb and Chepko as well as a number of the court's evidentiary rulings. These included denying Kiddy's motions in limine and allowing Dr. Beverly McMillan to be cross-examined about her involvement in the right-to-life movement and her alleged suggestions of individuals willing to serve subpoenas to prospective witnesses; allowing the jury to consider Kiddy's medical records with Dr. Barbara Goff; allowing the defense to use medical records in questioning Dr. Freda Bush regarding Dr. McMillan's treatment of Kiddy when Dr. McMillan was available to testify; and refusing to allow Dr. McMillan to give rebuttal testimony regarding the authoritativeness of certain medical treatises.
[4] Rule 59 sets forth the ground rules for granting motions for a new trial as follows:

(a) Grounds. A new trial must be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of Mississippi; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted on suits in equity in the courts of Mississippi.
On a motion for a new trial in an action without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law make new findings and conclusions, and direct the entry of a new judgment.