734 So.2d 256 (1999)
John L. BURNHAM and Carol A. Burnham, individually and on behalf of their minor daughter, Sera Elizabeth Burnham, Appellants,
v.
Larry STEVENS, Appellee.
No. 96-CA-01091 COA.
Court of Appeals of Mississippi.
February 9, 1999.
*257 Cynthia A. Langston, Jackson, Skip Edward Lynch, Gautier, Attorneys for Appellants.
James D. Holland, Andrew W. Eversberg, Ridgeland, Attorneys for Appellee.
EN BANC.
COLEMAN, J., for the Court:
¶ 1. Appellants, John L. Burnham and Carol A. Burnham, individually and on behalf of their minor daughter, Sera Elizabeth Burnham, appeal from the judgment of the Circuit Court of Attala County for the appellee, Larry Stevens, the defendant *258 in the trial court. The Burnhams had filed a complaint against the City of Kosciusko School System, the City of Kosciusko School Board, Dr. David Sistrunk, superintendent of the Kosciusko School System, Larry Stevens, the principal of the Upper Elementary School in the Kosciusko Separate School District, Cindy Heilbronner, Carolyn Collins, Linda Crowe, and John Does 1-10. The Burnhams sought to recover damages for injuries to Sera Burnham caused by Stevens's excessive force when he administered three licks with a paddle to Sera to punish her failure to turn in a ten-page report which Stevens had assigned the previous day as a disciplinary matter. The Burnhams also charged "upon information and belief, defendants made false reports of child abuse against Plaintiff John Burnham." In their appeal, the Burnhams present for our review and resolution the following four issues, which we quote verbatim from their appellate brief:
1) DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY NOT DISQUALIFYING HIMSELF FROM THE CAUSE, AFTER A MOTION TO RECUSE WAS FILED BY THE PLAINTIFFS?
2) DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY REFUSING TO ADMIT CERTAIN EVIDENCE AND TESTIMONY PURSUANT TO THE PUBLIC RECORDS EXCEPTION OF M.R.E. 803(8)(C)?
3) DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY SEVERING THE TRIALS OF THE SEPARATE DEFENDANTS, WHEN BOTH DEFENDANTS WERE CONCURRENT PROXIMATE CAUSES OF THE PLAINTIFFS EMOTIONAL INJURIES?
4) DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY REPEATEDLY OVERRULING OBJECTIONS TO HEARSAY AND OPINION TESTIMONY FROM A LAY WITNESS?
We resolve these issues adversely to the Burnhams and affirm the trial court's judgment for Stevens.

I. FACTS
¶ 2. Our recitation of the facts reflects the evidence which appears to support the jury's verdict for Larry Stevens. On Monday, February 28, 1994, Carol Burnham, Sera's mother, attended a conference with Cynthia Roby Heilbronner, a fifth-grade teacher at Kosciusko Upper Elementary School and Linda Crowe. Larry Stevens, the principal of Upper Elementary, joined the conference "as soon as he was relieved of outside duty." Sera, who was a student in the fifth grade at Upper Elementary, was the subject of this conference. Ms. Burnham asked Ms. Heilbronner, Ms. Crowe, and Stevens to help her daughter Sera "deal with the problems at school," and she gave Stevens permission to paddle Sera, "if she needed paddling."
¶ 3. The next day, March 1, at an unspecified hour, Sera Burnham and her classmates, among whom was Lynn Lee, entered Ms. Heilbronner's classroom "after break." The members of this fifth-grade class were "just pushing and scuffling with each other" creating a lot of noise, and one child was crying. Ms. Heilbronner heard Lynn Lee say, "She has called me `a nappy haired white trash,' and I cannot take that anymore." Lee was referring to Sera Burnham. Sera admitted to Ms. Heilbronner that she had called Lynn Lee that name. Ms. Heilbronner instructed Sera to take her seat in the classroom, but Sera refused. Ms. Heilbronner instructed her classroom assistant, Carolyn Collins, to take Sera to Stevens's office because Ms. Heilbronner was anxious to begin the instruction to prepare her students to take the Stanford Achievement Tests.
¶ 4. When Ms. Collins and Sera arrived in the principal's office, Stevens asked Sera if she had called Lynn Lee "a nappy *259 headed poor white trash," and Sera replied, "Yes, I did." Stevens then assigned Sera a ten-page report, which Sera was to copy "from whatever chapter she was studying at the time in social studies." Stevens told Sera that she must bring the completed report to him the next morning. Stevens warned Sera that if she did not have the report finished and delivered to him by the next morning, he "would give her a spanking which would be three licks."
¶ 5. The next morning, when Sera returned to school, she encountered Ms. Collins, who inquired if she had finished her ten-page report for Mr. Stevens. When Sera replied, "No," Ms. Collins began to escort her to Stevens's office. As Ms. Collins and Sera approached Stevens's office, they encountered Ms. Heilbronner, who was walking toward the principal's office to check her mailbox. When Ms. Collins told Ms. Heilbronner that Sera had not done her report, Ms. Heilbronner replied, "Okay, well, let's just go see Mr. Stevens."
¶ 6. Inside Mr. Stevens's office, Mr. Stevens inquired of Sera whether she had completed her report, to which Sera replied that she had not. When Sera told Mr. Stevens that she had not done any of the report, Stevens instructed Sera "to hold the table," and he administered the three licks with a paddle to Sera's buttocks. The paddling occurred shortly before 8:00 o'clock. After Stevens paddled Sera, she returned to her class and remained in school for the rest of that day.
¶ 7. That evening at home, Sera sat on the couch beside her mother. When she sat down, Sera, according to Ms. Burnham's testimony, "just leapt back up off the couch...." Sera told her mother that "she had got a paddling at school." When Ms. Burnham examined Sera's buttocks, she found "three marks where [Sera] was hit with that board [which] were very clear, very plain, very swollen, and very red." Ms. Burnham awakened Mr. Burnham, and they took Sera to the Montfort Jones Hospital in Kosciusko. There, an emergency room physician, Dr. Edward E. Bryant, examined Sera. Dr. Bryant prescribed the application of ice packs to Sera's buttocks and advised Sera's parents to give Sera Advil for the pain. While the Burnhams were at the hospital, some Kosciusko police officers came and took pictures of Sera's buttocks.
¶ 8. Sera refused to return to the Upper Elementary School the next day. The Burnhams investigated the possibilities of enrolling Sera either in the Attala County Public School System or French Camp Academy, a private school located northeast of Kosciusko on the Attala-Choctaw County line. Instead, they enrolled Sera in East Holmes Academy, a private school. Sera finished the academic year at East Holmes, and she repeated the fifth grade there the following year. By the time this case was tried, the Burnhams had moved to Jackson, Tennessee, where Ms. Burnham's sister lived.
¶ 9. Shortly after these events, the Department of Human Services (DHS) investigated Stevens's paddling of Sera. Ms. Billie Sims, the Regional Director for DHS, Family and Children's Services, wrote Dr. Sistrunk, the superintendent of the Kosciusko Separate Municipal School District a letter in which she advised that the DHS investigation had substantiated physical abuse of Sera by Stevens. On May 6, 1994, Dr. Sistrunk filed a report of John Burnham's abuse of his daughter Sera with DHS.

II. LITIGATION
¶ 10. On Friday, September 6, 1996, before the trial of this case began on Wednesday, September 18, 1996, the trial court conducted a hearing on the several defendants' motion to dismiss them from this lawsuit and the Burnhams' motion that the trial judge recuse himself. The trial court dismissed all of the defendants except Dr. Sistrunk and Stevens, and he denied the Burnhams' motion for recusal. During the *260 course of this hearing, there arose the issue of whether the Burnhams' claims against the two remaining defendants, Stevens and Dr. Sistrunk, ought to be severed. The trial court severed their trials, and ultimately the Burnhams elected to try first their claim against Stevens.
¶ 11. On September 18, 1996, the day this trial began, Stevens filed a motion in limine. Among the subjects of this motion was the letter from Ms. Sims to Dr. Sistrunk in which she reported the result of the DHS investigation of Sera's paddling.[1] After the jury had been empaneled, the trial judge considered Stevens's argument in support of his motion in limine away from the jury's presence. Stevens's apparent concern was that the Burnhams' counsel would mention the DHS investigation during her opening statement. The trial judge prohibited the Burnhams' counsel from mentioning the investigation during her opening statement but stated, "We will see about the admissibility [of the investigation's result] down the road."
¶ 12. When trial began all three Burnhams testified, and they called other witnesses who testified about their observations of the injuries to Sera's buttocks. Ms. Sims was called as the Burnhams' next-to-last witness. Before Ms. Sims began to testify, the trial judge recessed the trial and excused the jury from the courtroom. In the jury's absence, Stevens moved to exclude Ms. Sims's testimony "in its entirety." On the judge's suggestion, the parties and he retired to his chambers so that counsel for Stevens and the Burnhams might argue that motion.
¶ 13. Aware that the Burnhams relied on Rule 803(8) of the Mississippi Rules of Evidence[2] to establish the admissibility of Ms. Sims's letter to Dr. Sistrunk, Stevens's counsel cited the following portion of the comment to Rule 803(8): "Opinions and conclusions contained in such reports should be excluded." The judge resolved the matter by reiterating that Ms. Sims could testify about facts she personally knew about Stevens's paddling Sera Burnham, but she could not give hearsay testimony regarding the result of DHS's investigation as she conveyed it to Dr. Sistrunk unless the Burnhams could qualify Ms. Sims as an expert who might then rely on the statements of others to support her own conclusion that the investigation substantiated Stevens's physical abuse of Sera Burnham. Stevens objected to any effort by the Burnhams to qualify Ms. Sims as an expert because the Burnhams had not provided her name as an expert whom they expected to call during discovery.
¶ 14. Regardless of the judge's resolution of Stevens's motion to strike Ms. Sims's testimony entirely, the Burnhams called Ms. Sims to testify about DHS's investigation. Over Stevens's objection, the trial judge permitted Ms. Sims to testify that an investigation had been conducted and that it had been completed. However, when the Burnhams' counsel asked about the investigation of Stevens's paddling Sera Burnham, Stevens objected "on the grounds that this is irrelevant to the issues of this case. It is highly prejudicial to the Defendant." Based on this objection and his earlier ruling on Stevens's *261 motion to strike Ms. Sims's testimony entirely, the trial judge barred the Burnhams' counsel from eliciting further information from Ms. Sims about the DHS investigation and its results.
¶ 15. The trial court denied Stevens's motion for directed verdict which he made after the Burnhams rested late in the afternoon of the first day of the trial. The next morning before Stevens called Dr. Edward E. Bryant, the emergency room physician who examined Sera Burnham at the Montfort Jones Hospital in Kosciusko, the Burnhams' counsel moved the judge to reconsider the admissibility of Ms. Sims's letter to Dr. Sistrunk. Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988), which we will subsequently consider, was the basis for the Burnhams' motion to reconsider. The trial judge opined, "The Beech case also interprets the Federal Rules of Evidence. We are under the Mississippi Rules of Evidence. And while they [the Mississippi Rules of Evidence] may have been based on that [the Federal Rules of Evidence] when they were drawn, the comments under our Rule are different." The judge then opined that "the comment under 803(8) is clear as to what can be admitted and can't be, and it says, `Opinions and conclusions contained in such reports should be excluded.'" He added that it was "a discretionary matter with [him] as to whether [he would] allow them under any circumstances...." The judge concluded, "I am exercising my discretion and its not going in." When the Burnhams' counsel inquired, "[A]re you making any ruling concerning the trustworthiness of this information?," the judge replied, "No, I don't think so."
¶ 16. Stevens's first witness, Dr. Edward E. Bryant, was to testify by his deposition which had been taken on February 7, 1996, and which the Burnhams' counsel attended. However, before Stevens began to read Dr. Bryant's deposition before the jury, the Burnhams' counsel "lodg[ed] an objection if there is any opinion testimony that is to be given because Dr. Bryant was named as an expert adduced on Monday of this week." Stevens's counsel retorted that the Burnhams had listed Dr. Bryant as an "expert to be called," and that the Burnhams' counsel had attended the deposition which Stevens now proposed to read. The judge overruled the Burnhams' objection, and Dr. Bryant's deposition was then read. Stevens also called as witnesses Ms. Heilbronner and Ms. Collins. The trial's result has been stated.

III. REVIEW, ANALYSIS, AND RESOLUTION OF THE ISSUES
¶ 17. Our general standard of review for jury verdicts prohibits this court from overturning that verdict unless we conclude that, perceiving the evidence as a whole in the light most favorable to the jury's verdict, no reasonable hypothetical juror could find as the jury found. Junior Food Stores, Inc. v. Rice, 671 So.2d 67, 76 (Miss.1996); Bell v. City of Bay St. Louis, 467 So.2d 657, 660 (Miss.1985). However, in regard to questions of law, we conduct a review de novo. Starcher v. Byrne, 687 So.2d 737, 739(¶ 6) (Miss.1997); Mississippi Farm Bureau Casualty Ins. Co. v. Curtis, 678 So.2d 983, 987 (Miss. 1996); Seymour v. Brunswick Corp., 655 So.2d 892, 895 (Miss.1995). We address the Burnhams's assignments of error in the order in which they arose in the case.

A. The Burnhams' first issue: Did the trial court err in declining to recuse himself from this cause upon motion by the appellants?

1. Standard of Review

¶ 18. The reviewing court applies the manifest error standard in addressing a judge's refusal to recuse himself. McFarland v. State, 707 So.2d 166, 180 (Miss.1997); Bredemeier v. Jackson, 689 So.2d 770, 774 (Miss.1997). "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his *262 impartiality." Jenkins v. State, 570 So.2d 1191, 1192 (Miss.1990) (quoting Rutland v. Pridgen, 493 So.2d 952, 954 (Miss.1986)); see also McFarland v. State, 707 So.2d at 180; Green v. State, 631 So.2d 167, 177 (Miss.1994). It is presumed that a judge who has been sworn to administer impartial justice is unbiased and qualified to hear the case. Green, 631 So.2d at 177; Turner v. State, 573 So.2d 657, 678 (Miss. 1990). The party seeking the judge's recusal must overcome this presumption by raising a reasonable doubt regarding the validity of this presumption. Id.; Rutland, 493 So.2d at 954.
¶ 19. In determining whether a judge should have recused himself, the reviewing court must consider the trial as a whole and examine every ruling to determine if those rulings were prejudicial to the complaining party. Hunter v. State, 684 So.2d 625, 630-31 (Miss.1996); Adams v. State, 220 Miss. 812, 817, 72 So.2d 211, 214 (1954).

2. Analysis

¶ 20. Prior to the trial, the Burnhams filed a motion requesting the circuit judge to recuse himself from this case. The Burnhams asserted the following reasons for requesting the recusal:
1. The circuit judge heard the criminal prosecution of the same matter while he was a municipal judge.
2. The judge previously represented Mr. and Mrs. Burnham in a bankruptcy hearing.
3. Mr. Burnham and the judge engaged in verbal combat on the courthouse steps during the judge's election campaign.
4. Mr. Burnham had spoken with the judge on the telephone before the criminal case in this matter was dismissed, and the judge purportedly told Mr. Burnham that he was in favor of corporal punishment and that the defendant, Mr. Stevens, did nothing wrong.
¶ 21. The Burnhams called no witnesses to testify in support of their motion for recusal which the trial judge heard on Friday, September 6. Instead, the sole basis in the record for the trial judge's recusal is the Burnhams' counsel's statements which she made during her argument on the motion for recusal. Her statements were not rendered as formal testimony as though she were a witness, although because she was an attorney, she made them as an officer of the court. The Burnhams' failure to call witnesses to establish an evidentiary basis on which to rest any of their reasons for requesting the judge's recusal poses two difficulties for this Court. First, the Burnhams' counsel's statements about the events in which Sera's father was involved, i.e., the "verbal combat on the courthouse steps during the judge's election campaign" and Mr. Burnham's speaking with the judge on the telephone before the criminal case against Stevens was dismissed, are hearsay. In Barnes v. State, 460 So.2d 126, 130 (Miss. 1984), the supreme court confronted the issue of whether a witness's attorney could testify about any "leniency/immunity agreement" which the State had offered that witness in return for his testimony against the appellant Barnes. The supreme court explicated:
On the other hand, if for whatever reason the attorney was not a party to the leniency/immunity agreement but only was told of it after the fact by his client, or by anyone else for that matter, that information would constitute hearsay and the attorney ordinarily would be precluded from giving testimony regarding the truth of these matters.
Id.
¶ 22. The following quotation from 81 Am Jur 2nd, Witnesses § 232 establishes our second problem:
Because the roles of an advocate and a witness are inconsistent inasmuch as the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively, an *263 advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility.
¶ 23. The Burnhams' counsel may be surprised by these observations, but we make them to emphasize our reluctance to find the trial judge erred when he failed to recuse himself given the state of the record which the Burnhams' counsel prepared for us on which to make this holding.
¶ 24. Regardless of these two difficulties with the competency of the evidence adduced by the Burnhams' counsel to support their position on this issue, the circuit judge entered his recollections on the record. The judge did not recall the incident of "verbal combat" which the Burnhams' counsel alleged, and he stressed that he knew that no such confrontation occurred because he simply did not engage in confrontations. As to that issue, the judge stated that his "opinion [was] that that incident never occurred in any shape, form or fashion."
¶ 25. The trial judge observed that the Burnhams were not a party to the criminal case filed in the Municipal Court of the City of Kosciusko and that their involvement was limited to their filing an affidavit in municipal court. The circuit judge, who was then serving as municipal court judge, appointed a special prosecutor who investigated the allegations and then filed a motion to dismiss the case. The trial court judge granted the special prosecutor's motion to dismiss the criminal matter before he had reached the facts of the case. Regarding this issue, the trial judge cited the case of Adams v. State, 220 Miss. 812, 818, 72 So.2d 211, 214 (1954), which provided that a judge who presided over a civil action regarding the defendant was not disqualified from presiding over the criminal trial involving the same defendant and the same facts.
¶ 26. The circuit judge determined that his representation of the Burnhams in their bankruptcy case did not present a possibility of prejudice against the Burnhams. Because the Burnhams' finances were not at issue, his knowledge of their financial situation would have no bearing on this matter.
¶ 27. Finally, the judge addressed the alleged telephone conversation with Mr. Burnham during the criminal trial. The judge stated that he refused to talk to Mr. Burnham, but Mr. Burnham talked at length. The judge emphasized:
I certainly never told him that ... I believed in corporal punishment and, therefore, Mr. Stevens would win the case. I do not do that and, as a policy, did not discuss cases with litigants when I was a municipal judge. That situation did not occur.
¶ 28. Given the presumption of the judge's impartiality and the apparent hearsay nature of the evidence regarding the alleged reasons for recusal, we find no manifest abuse of discretion by the trial judge when he denied the Burnhams' motion that he recuse himself. Therefore, this Court resolves the Burnhams' first issue adversely to them and affirms the trial court's denial of their motion that he recuse himself.

B. The Burnhams' third issue: Did the trial court err in severing the trials of the two defendants?

1. The Burnhams' argument
¶ 29. The Burnhams acknowledge "that Stevens was liable for the instant paddling incident and Dr. Sistrunk was liable for making a false report of child abuse against Mr. Burnham." As Stevens counters in his argument that the trial judge did not err by severing the claims against Stevens and Dr. Sistrunk for separate trials, "There were ... two separate and distinct causes of action involved with different facts, witnesses, and parties." Regardless of Stevens's argument, the Burnhams argue, "These issues are so intertwined and the actions of the separate defendants are concurrent causes of the plaintiffs' injuries and arose out of the same event." Thus, the Burnhams assert *264 that they "were severely prejudiced by their severance."
¶ 30. To support their argument, the Burnhams cite two Mississippi Supreme Court cases. In the first case, Kiddy v. Lipscomb, 628 So.2d 1355, 1357 (Miss. 1993), the supreme court reversed and remanded a judgment for Dr. Larry Lipscomb, one of two physicians whom the appellant, Kiddy, had sued jointly, but whose motion "to bifurcate the proceedings" the trial court had granted. The trial court had severed the claims against Dr. Lipscomb and his co-defendant, Dr. Chepko, because Dr. Lipscomb "would be prejudiced by any affiliation with Dr. Chepko, who had been [convicted on] child pornography charges." Id. The supreme court found the trial court's bifurcation of the trials of the two physicians to have been reversible error. The court explained:
The facts of the cases against the two physicians are too closely intertwined to warrant the time and expense of trying them separately. More importantly, allowing separate trials sets the scene for the two doctors to play a game of "divide and conquer."
Id. at 1357-58. The Burnhams argue, "Therefore, [Dr.] Sistrunk without having to take any shots from Stevens and vice versa would be allowed to point the finger at [Stevens's] empty chair and assert that all liability for the Burnhams' emotional injury came from [Stevens]."
¶ 31. The Burnhams' second case is Smith v. Dillon Cab Company, Inc., 245 Miss. 198, 146 So.2d 879 (1962), in which the supreme court reiterated the time-honored principle that joint tortfeasors are jointly liable for damages which their separate acts of negligence caused:
As a general rule, it may be said that negligence, in order to render a person liable, need not be the sole cause of an injury. It is sufficient that his negligence, concurring with one or more efficient causes, other than plaintiff's fault, is the proximate cause of the injury. Accordingly, where several causes combine to produce injuries, a person is not relieved from liability because he is responsible for only one of them, it being sufficient that his negligence is an efficient cause, without which the injury would not have resulted, to as great an extent, and that such other cause is not attributable to the person injured. It is no defense to one of the concurrent tortfeasors that the injury would not have resulted from his negligence alone, without the negligence or wrongful acts of the other concurrent tort-feasor.
245 Miss. at 205-6, 146 So.2d at 882.
¶ 32. The Burnhams note that the Kiddy court quoted from the Smith opinion with approval. This Court notes with interest that the Burnhams couch their argument on this issue in terms of the "severe emotional distress" which Mr. and Mrs. Burnham suffered "from both the paddling incident by Stevens ... and the false and fraudulent report of child abuse made by Sistrunk." Based upon Smith, the Burnhams argue that "[w]ithout trying these causes together, the Burnhams would be unable to sustain a directed verdict as to those damages [for emotional distress], since they flowed from the actions of both defendants." They blame the trial court's grant of a directed verdict for Stevens "as to [their] emotional damages" on the severance which the trial court had previously granted.

2. Stevens's argument
¶ 33. In addition to Stevens's argument that "[t]here were also two separate and distinct causes of action involved with different facts, witnesses, and parties," Stevens notes that "the Burnhams made no allegations in their pleadings that the causes of action [against Stevens for the use of excessive force and against Dr. Sistrunk for libel] were connected in any way." Stevens argues, instead, that the Burnhams' amended complaint "clearly indicat[ed] two distinct intentional tort *265 claims brought by different plaintiffs against different defendants, and supports [the trial judge's] decision to bifurcate the case."[3] Stevens concludes, "The trial judge is given broad discretion to sever such claims, and he did not abuse his discretion in the case at bar. Severance was necessary to avoid prejudice to the defendants and to avoid confusion by the jury of the issues."

3. Standard of Review
¶ 34. The Mississippi Supreme Court has applied an abuse of discretion standard of review in considering the issue of severance. Estate of Jones v. Quinn, 716 So.2d 624, 626(¶ 6) (Miss.1998), citing Kiddy, 628 So.2d at 1358. Therefore, this Court will not reverse the trial court's decision to sever the trials of the Burnhams' claims against Stevens and Dr. Sistrunk absent an abuse of the trial judge's discretion in granting Stevens's and Dr. Sistrunk's ore tenus motion to grant the severance.

4. Analysis and resolution of the issue
¶ 35. Stevens and Dr. Sistrunk raised this issue during the pre-trial hearing on other motions without their having previously filed a separate motion for severance. Rule 20(b) of the Mississippi Rules of Civil Procedure authorizes the trial court to order separate trials.[4] Rule 21 of the Mississippi Rules of Civil Procedure provides that "[a]ny claim against a party may be severed and proceeded with separately." M.R.C.P. 21.
¶ 36. In this case, the trial judge determined that trying the claims against Mr. Stevens and the claims against Dr. Sistrunk might be prejudicial to the defendants. The trial judge articulated this reason for severing the claims: "I think you've got two distinct fact situations that are not related in time very well." The Burnhams argue that the two events Stevens's paddling Sera and Dr. Sistrunk's filing his report that John Burnham had abused Seraare "closely related" and that "[o]ne happened fairly immediately after the first." Stevens's paddling Sera occurred on March 2, 1994, and Dr. Sistrunk filed his report with DHS on May 9, 1994. However, the passing of two months between these two incidents on which the Burnhams based their claims is outweighed by other factors, including the following: (1) The use of excessive force was the basis for the Burnhams' claim against Stevens, but libel was the basis of their claim against Dr. Sistrunk; (2) Sera Burnham had the primary claim for damages, i.e., her injuries, against Stevens, but Sera's father, John Burnham, had the primary claim for damages against Dr. Sistrunk because he was the subject of Dr. Sistrunk's accusations contained in the report submitted to DHS.
¶ 37. Our standard of review requires that we affirm the trial court's grant of Stevens and Dr. Sistrunk's motion to sever their trials unless we determine that the trial court abused its discretion in granting the severance. Rule 20(b) provides that the trial court "may order separate trials... to prevent ... prejudice." M.R.C.P. 20(b). This Court agrees with the trial judge's finding that the disparity of the Burnhams' claims presented potential prejudice for both Stevens and Dr. Sistrunk. As for the Burnhams' argument that they could not overcome Stevens's motion for directed verdict on their claim *266 for emotional distress because of this severance, the record reflects that the trial judge granted that aspect of Stevens's motion for directed verdict because the Burnhams had failed to adduce any evidence to support their claim that they had endured such emotional distress. This Court sees no correlation between the Burnhams' failure to adduce evidence of their emotional distress and the trial court's grant of separate trials for Stevens and Dr. Sistrunk. Had the Burnhams' claims against both Stevens and Dr. Sistrunk been tried simultaneously, the Burnhams would have failed to survive the two defendants' motion for directed verdict as to the Burnhams' claim for emotional distress if the Burnhams offered no evidence that they had suffered such emotional distress. We affirm the trial court's granting Stevens and Dr. Sistrunk's motion for the severance of their trials pursuant to Rule 20(b) of the Mississippi Rules of Civil Procedure.

C. The Burnhams' second issue: Did the trial court err in excluding certain evidence and testimony as hearsay in spite of the appellants' argument that the public records exception to the hearsay rule applied?
¶ 38. The Burnhams called Billie Sims, the DHS Regional Director for Family and Children's Services, to testify about the result of an investigation made by DHS personnel of Stevens's paddling of Sera Burnham. We previously reviewed her testimony on page 7 of this opinion, the substance of which was that a DHS investigation of Sera's paddling had been completed. The Burnhams failed to introduce even by way of identification a copy of Ms. Sims's letter to Dr. Sistrunk or the report itself. The only information which this Court has about the DHS investigation is the statement in the Burnhams' brief that Ms. Sims wrote Dr. Sistrunk that "[t]he finding of the investigation is substantiated physical abuse of Sera [sic] by the Upper Elementary School principal (Stevens)."
¶ 39. In Vinson v. Johnson, 493 So.2d 947, 949 (Miss.1986), the supreme court admonished:
Because attorneys continue to allege in briefs facts on which a record is blank, we are constrained to once again make the point. If something happens in a trial court about which a party feels aggrieved, he will not be allowed to complain of it on appeal unless he gets it in the record.
Likewise, in Ditto v. Hinds County, Miss., 665 So.2d 878, 880 (Miss.1995), the supreme court grappled with the failure to include in the record certified copies of a particular board meeting of the City of Jackson. While the supreme court ultimately considered the omitted minutes even though they were not included in the record because the chancellor had properly taken judicial notice of them, it observed:
This Court "may not act upon or consider matters which do not appear in the record and must confine itself to what actually does appear in the record." Shelton v. Kindred, 279 So.2d 642, 644 (Miss.1973); see St. Louis Fire & Marine Ins. Co. v. Lewis, 230 So.2d 580, 583 (Miss.1970) (statements of facts found within briefs of counsel will not be considered unless also shown by record.); Moore v. White, 161 Miss. 390, 137 So. 99 (1931).
Ditto, 665 So.2d at 880.
¶ 40. The Burnhams presented a novel argument based upon Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988), in which the United States Supreme Court applied Federal Rule of Evidence 803(8)(c) and held, according to be Burnhams, "that reports based on factual findings can include conclusions or opinions that flow from a factual investigation." The Burnhams reasoned that because Federal Rule of Evidence 803(8)(c) is composed identically to Mississippi Rule of Evidence 803(8)(c), this Court should adopt "a broad interpretation" of *267 Mississippi Rule of Evidence 803(8)(c)[5] by applying the Beech rationale to the DHS investigation and Ms. Sims's letter to Dr. Sistrunk and holding the report and/or letter to be admissible pursuant to Mississippi Rule of Evidence 803(8)(c). However, this Court cannot review this issue because neither the report nor Ms. Sims's letter is to be found in the record. The Burnhams' quotation of the contents of Ms. Sims's letter to Dr. Sistrunk in their brief is an inadequate basis for this Court to resolve their second issue.

D. The Burnhams's fourth issue: Did the trial court err in overruling the appellants' objections to testimony from a lay witness which appellants' argued was inadmissible as hearsay and opinion testimony?

1. The Burnhams' argument
¶ 41. In their fourth issue, the Burnhams complained that "Dr. Edward Bryant ... was allowed to give opinion testimony without being qualified and without being named as an expert witness." The Burnhams correctly note that Stevens did not declare during discovery that he intended to call Dr. Edward E. Bryant, the emergency room physician who examined Sera at Montfort Jones Hospital on the night of March 2, as an expert witness; Stevens is equally correct that neither did the Burnhams. Nevertheless, without their identifying specifically the nature of the "opinion testimony" which Dr. Bryant gave "without being qualified and without being named as an expert witness," the Burnhams assert that because Stevens failed to designate Dr. Bryant as an expert witness, the trial judge erred by allowing Stevens, who called Dr. Bryant as his first witness, "to extract leading and/or opinion testimony from a non-expert witness." The second phase of the Burnhams' argument is that the trial judge never accepted Dr. Bryant as an expert witness. As a corollary of both phases of their argument, the Burnhams further complain that they "were forced to object a total of eighteen times to leading and opinion testimony [by Dr. Bryant]." They claim that "[t]he trial court repeatedly refused to sustain most objections and allowed [Stevens] to subvert the Mississippi Rules of Civil Procedure and Mississippi Rules of Evidence and cast the [Burnhams] in an unfavorable light before the jury."

2. Stevens's rebuttal
¶ 42. Stevens counters that while neither the Burnhams nor he designated Dr. Bryant as an expert witness, both the Burnhams and he listed Dr. Bryant "as an individual who may be called as a witness at trial." Stevens further urges that both he and the Burnhams deposed Dr. Bryant prior to trial, during which "the doctor testified regarding his observations, conclusions and diagnosis." Stevens adds that "[n]o objection to Dr. Bryant's qualifications were made by the Burnhams at [Dr. Bryant's] deposition."

3. Resolution of the issue

a. Stevens's failure to declare that he would call Dr. Bryant as an expert witness

1. Standard of Review
¶ 43. The first phase of the Burnhams' argument involves Stevens's failure to disclose that he would call Dr. Bryant as an expert witness. "In regard to matters relating to discovery, the trial *268 court has considerable discretion." Mississippi Valley Gas Co. v. Estate of Walker, No. 95-CA-00907-SCT p. 8, 725 So.2d 139 (Miss.1998) (quoting Dawkins v. Redd Pest Control Co., 607 So.2d 1232, 1235 (Miss.1992)). "The very purpose of our civil discovery procedures is to prevent ... trial by ambush." Jones v. Hatchett, 504 So.2d 198, 200 (Miss.1987).

2. Resolution of the Burnhams' first phase of this issue
¶ 44. The basis for the Burnhams' argument this phase of their fourth issue is Rule 26(b)(4)(A)(i), which states:
A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.
M.R.C.P. 26(b)(4)(A)(i).
¶ 45. Stevens, not the Burnhams, called Dr. Bryant as a witness. The Burnhams did not object to Stevens's introduction of a portion of the emergency room record compiled by Dr. Bryant. However, Dr. Bryant expressed one opinion over the Burnhams' objection that he "ha[d]n't been qualified as an expert." The opinion elicited by Stevens was that bruises are "very common." Dr. Bryant expressed his opinion after he had explained "What can cause a bruise?" without objection from the Burnhams' counsel. Over the Burnhams' objection that the question which adduced his answer was leading, the trial judge allowed Dr. Bryant to testify that Sera "was in no acute distress at the time [that Dr. Bryant examined her in the emergency room of the Montfort Jones Hospital]."
¶ 46. Both the Burnhams and Stevens listed Dr. Bryant as a possible witness in their discovery responses. The one-sentence resolution of the first phase of the Burnhams' fourth issue is that the trial judge did not abuse his discretion by allowing Stevens's counsel to elicit these particular opinions from Dr. Bryant because, as Stevens asserted in his argument, the Burnhams' counsel participated in deposing Dr. Bryant prior to trial and, thus, the Burnhams could hardly cry "ambush" when the trial judge allowed Dr. Bryant to express these "expert opinions." Moreover, the Burnhams had indicated during discovery that they intended to call Dr. Bryant as their "fact" witness.

b. The trial judge's failure to find that Dr. Bryant was an expert

1. Standard of review
¶ 47. The decision of whether a witness is adequately qualified as an expert is left to the sound discretion of the trial judge. Couch v. City of D'Iberville, 656 So.2d 146, 152 (Miss.1995) (citing Poirrier v. De Grande, 604 So.2d 268, 270 (Miss.1992)). In order to warrant reversal, the erroneous admission of evidence must be prejudicial to a party. Century 21 Deep S. Properties, Ltd. v. Corson, 612 So.2d 359, 369 (Miss.1992). "Unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion, [the decision to admit expert testimony] will stand." Roberts v. Grafe Auto Co., Inc., 701 So.2d 1093, 1098 (Miss.1997).

2. Resolution of the second phase of this issue
¶ 48. The record contains the following testimony from Dr. Bryant about his past professional experience:
Since arriving back in Kosciusko after an Air Force period of service in '83, I've worked in general family medicine delivering care from ER to babies to surgery. So, usually every third to fifth night I'm on call, and we see patients in the emergency room as they come in to either treat them after hours, weekends, or admit them from the emergency room.
*269 ¶ 49. The Burnhams do not identify the "expert opinions" given by Dr. Bryant to which they now object. Stevens assumes that the objectionable expert opinion was that bruises are "very common." While the Burnhams complain that they "were forced to object a total of eighteen times to leading and opinion testimony," the record reflects that the trial judge sustained several of their objections and that by doing so, Dr. Bryant's testimony was restricted primarily to what he observed when he examined Sera in the emergency room of the Montfort Jones Hospital. This Court is uncertain that an opinion that bruises are "very common" is an expert medical opinion, but regardless, this Court finds no abuse of discretion by the trial judge in allowing Dr. Bryant to express the opinions that he did. Therefore, we resolve the Burnhams' fourth issue adversely to them.

IV. CONCLUSION
¶ 50. "Abuse of discretion" is the standard of review for analyzing and resolving the Burnhams' third and fourth issues, which involved the trial court's severance of the trials of Stevens and Dr. Sistrunk and the trial court's management of Dr. Bryant's testimony as the emergency room physician who examined Sera Burnham. As we have explained, we find no abuse of discretion by the trial court in either of these issues. As for the Burnhams' first issuethat the trial judge ought to have recused himselfthe Burnhams' reasons find no evidentiary support in the record, especially in consideration of the trial judge's responses to the Burnhams' counsel's rendition of those reasons during the hearing on the motion for recusal. As for the Burnhams' second issue, which was the trial court's error in refusing to admit either the report of the DHS investigation or the letter explaining the result of that investigation from Ms. Sims to Dr. Sistrunk, this Court declines to review it, regardless of the somewhat novel argument offered by the Burnhams, because neither a copy of the report of the investigation nor a copy of Ms. Sims's letter was introduced into evidence. Thus, this Court affirms the judgment of the Attala County Circuit Court.
¶ 51. THE JUDGMENT OF THE ATTALA COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANTS.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., DIAZ, KING, PAYNE, and SOUTHWICK, JJ., CONCUR.
IRVING and LEE, JJ., NOT PARTICIPATING.
NOTES
[1] Nowhere in the record does a copy of this letter from Ms. Sims to Dr. Sistrunk appear.
[2] Rule 803(8) provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
. . . .
Public Records and Reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.
M.R.E. 803(8).
[3] After the Burnhams filed their original complaint as we recited, they filed an amended complaint, the sole purpose of which appears to have been to add another classroom teacher as yet another defendant. However, that teacher was dismissed with the other defendants as we noted.
[4] Rule 20(b) provides:

(b) Separate Trials. The court may make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a party against whom he asserts no claim and who asserts no claim against him, and may order separate trials or make other orders to prevent delay or prejudice.
M.R.C.P. 20(b).
[5] Rule 803(8) reads as follows:

(8) Public Records and Reports. Records, reports, statements or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.
Rule 803(8), M.R.E. (1998).